EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA v. BETTY LACHMAN

No. 146A81

(Filed 4 May 1982)

1. State § 12— dismissal of Employment Security Commission employee—jurisdiction of State Personnel Commission over grievance appeal

An employee of the Employment Security Commission was a competitive service employee and thus was not required to have been continuously employed by the State for five years in order to avail herself of the grievance procedures established for State employees by G.S. Ch. 126. Therefore, the State Personnel Commission had jurisdiction under G.S. 126-34 and 126-39 to consider the employee's appeal from her dismissal by the Employment Security Commission although the evidence failed to show that she had been employed by the State for five years immediately preceeding her dismissal.

---

1. *North Carolina Manual*, 1981, pp. 129-30.

Employment Security Commission v. Lachman

2. **State § 12— State employee—reason for dismissal—finding unsupported by record**

　　The conclusion of the State Personnel Commission that defendant was fired as an employee of the Employment Security Commission solely for job abandonment was unsupported by substantial evidence in view of the entire record; rather, the evidence, including the letter of dismissal, showed that the dismissal was for both insubordination and job abandonment.

3. **State § 12— dismissal of State employee—evidence of insubordination**

　　A memorandum to defendant from her supervisor on 23 January 1978 concerning her attitude and language in the presence of tax auditors was relevant to the issue of insubordination on 23 February 1978 because it showed a recent pattern of an insubordinate and uncooperative attitude by defendant. However, an interoffice communication from defendant's supervisor on 29 July 1977, a note from defendant to her supervisor and testimony relating to defendant's language and actions on that date because she did not receive a pay increase was not competent to show defendant's insubordination on 23 February 1978.

4. **State § 12— State employee—meaning of insubordination**

　　The refusal of a State employee to accept a reasonable and proper assignment from an authorized supervisor must be willful in order to constitute insubordination. However, a hearing officer of the State Personnel Commission erred in ruling that in order for the choice not to obey the authorized supervisor's reasonable order to be willful it must be made "without such outside considerations as broken equipment, ill health, unavailability of necessary materials, etc.," since these considerations are factors in determining whether the order was reasonable, not whether the choice was willful.

ON defendant's petition for certiorari to review the decision of the Court of Appeals[1] which reversed the judgment of *Braswell, Judge*, entered 18 February 1980 in the Superior Court, WAKE County, affirming the order of the State Personnel Commission which required the Employment Security Commission (hereinafter ESC) to reinstate Betty Lachman to the position of records clerk with ESC from which she had been dismissed on 24 February 1978.

The primary issue in this case is whether the State Personnel Commission has jurisdiction to hear the grievance appeal of an employee of the ESC. We hold that it does. We also hold that for errors in the exclusion of certain evidence offered by the ESC and in the Conclusions made by the hearing officer, the decision

---

1. Reported at 52 N.C. App. 368, 278 S.E. 2d 307 (1981). We allowed defendant's petition on 3 November 1981.

of the Court of Appeals must be modified and the case remanded for a new hearing.

*T. S. Whitaker and Garland D. Crenshaw, Attorneys for Plaintiff-Appellee, Employment Security Commission.*

*Blanchard, Tucker, Twiggs, Denson & Earls, P. A., by Irvin B. Tucker, Jr., Attorneys for Defendant-Appellant, Betty Lachman.*

MEYER, Justice.

Betty Lachman was discharged from her job with the ESC by letter dated 24 February 1978. After exhausting all internal grievance procedures provided by the ESC, she appealed to the State Personnel Commission. Her appeal was heard on 19 April 1979 by E. D. Maynard III, hearing officer for the State Personnel Commission.

The hearing officer made twenty-nine Findings of Fact, a summary of which follows: Ms. Lachman was a former employee of the ESC who had worked as a records clerk in the Claims Division. At approximately 2:00 p.m. on 23 February 1978, Ms. Minda Bunn, Ms. Lachman's supervisor, asked Ms. Lachman whether she had begun working on some reports, the processing of which had been delayed due to problems with a computer. Ms. Lachman replied that she could not do this work because she felt ill.

Ms. Bunn then went to see Mr. Hugh Ogburn, Chief of the Benefits Division, who had informed Ms. Lachman in January that the reports needed to be processed as quickly as possible, about what she felt was Ms. Lachman's refusal to perform her work. She could not see Mr. Ogburn then, but did discuss the situation with Mr. Carl Light, Assistant to Mr. Ogburn. They both then talked to Mr. Ogburn, who suggested that Mr. Light have a meeting with Ms. Lachman and Ms. Bunn, at which time Ms. Bunn would again instruct Ms. Lachman to process the reports. Mr. Light then had Mr. Allen Marshburn find Ms. Lachman and bring her to a meeting in Mr. Light's office.

Present at this meeting were Ms. Lachman, Ms. Bunn, Mr. Light and Mr. Marshburn. When Ms. Lachman arrived at the meeting at approximately 2:30 p.m., Mr. Light asked her how she was. She replied that she did not feel well. Mr. Light said that

Mr. Ogburn wanted the reports by the end of the month, and he did not want Mr. Ogburn angry with him if they were not ready. Mr. Light said that he wanted Ms. Lachman to do the reports. She then told Mr. Light that she was feeling faint, dizzy and nauseous, and that work with the computer required by the reports would aggravate these symptoms. Mr. Light then stated that the reports had to be done and asked Ms. Lachman why she was at work if she were sick. Mr. Light suggested that if she were sick, she should take sick leave and go home. Ms. Lachman said that she could still do routine work and that as long as she could do some light work, she didn't feel it was necessary to go home. Mr. Light reiterated that he felt that if Ms. Lachman were sick, she should be at home. Ms. Lachman disagreed and said that she felt that she should stay at the office as long as she could do some work, and that she should stay, even if she couldn't process the wage reports. Mr. Light then said he was going to let Ms. Bunn tell Ms. Lachman what to do. Ms. Bunn told her she had to do the wage reports by hand if necessary. Ms. Lachman and Ms. Bunn then discussed this; Ms. Lachman told Ms. Bunn that because she was dizzy, disoriented and nauseous, she could not work with the computer. Mr. Light then told Ms. Lachman if she couldn't do the reports she would have to take sick leave. Ms. Lachman replied that she did not feel she should have to take sick leave in that she was able to do some work and was not contagious. Ms. Lachman told Mr. Light that she had already used the sick leave that she had accumulated in January and February of that year. Feeling (for whatever reason) that this conversation was leading to her dismissal, Ms. Lachman told Mr. Light that he could fire her if he wanted to, but that she was not able to do the requested work. Mr. Light responded that Ms. Lachman could either go to the computer and do the work or she could go home on sick leave.

Although no one but Ms. Lachman had mentioned her dismissal in this meeting, she took Mr. Light's last remark to mean that she was dismissed. Ms. Lachman then said that she would go home and stay. Mr. Light, thinking that she was resigning, told Ms. Lachman that if she was quitting he wanted a written statement to that effect; Ms. Lachman's response was that she didn't want to make a statement, that she had said all she had to say.

Ms. Lachman then went to her desk, removed her personal effects and left the building. This was at approximately 3:00 p.m. Ms. Lachman's usual quitting time was at 4:45 p.m. Ms. Bunn observed Ms. Lachman cleaning out her desk and leaving but did not question her about this.

At the conclusion of the meeting, Mr. Light did not believe Ms. Lachman was resigning; it was his impression, from similar past incidents, that she was leaving on sick leave, and would report the next day.

When Ms. Lachman left the meeting on 23 February 1978, she believed she had been dismissed. However, no one had told her this, and she was the only person to bring up the subject of dismissal in the meeting.

Ms. Lachman did not report to work the next day; neither did she call in to notify anyone that she would not report for work. She did not go to work because she believed that she had been dismissed, and therefore, that she was not expected to call in.

Ms. Lachman made a doctor's appointment the next day. That morning, before going to the doctor, she went to the ESC business office and turned in her weekly and monthly time sheets to Ms. Merle Martin. She did this in order to get her check for that month on her regular pay day. Ms. Lachman told Ms. Martin that she was handing in her time sheets because she had been terminated. Sometime later, the ESC Personnel Officer, Mr. James McGaughey, came by Ms. Martin's office. Ms. Martin mentioned that Ms. Lachman had come in and handed in her time sheets, and that these needed to be taken to Ms. Lachman's unit. Mr. McGaughey commented that it appeared Ms. Lachman had "abandoned" her job, and offered to take the sheets to the Benefits Division.

Mr. McGaughey took Ms. Lachman's time sheets to Mr. Light. Mr. Light then went to Mr. Ogburn and told him that it appeared that Ms. Lachman had quit. Mr. Light made this observation based upon Ms. Lachman's failure to report for work or to call in, and her turning in her time sheets. Mr. Ogburn asked Mr. Light to furnish him with a memorandum of the events which led up to the situation on 24 February 1978. Mr. Light gave Mr.

Ogburn a memorandum as requested later that day. In this memorandum, Mr. Light recommended that Ms. Lachman be dismissed. Sometime that afternoon, Mr. Ogburn sent Ms. Lachman the following letter dismissing her:

> Dear Ms. Lachman:
>
> On February 23, 1978, *you refused to accept a reasonable and proper assignment of work from, an authorized supervisor of this Agency. This action on your part is a direct act of insubordination.*
>
> Immediately *after refusing this assignment of work,* you removed your personal belongings from your desk and left the building at approximately 2:45 p.m.
>
> Since you failed to report for work or call in on February 24, 1978, we consider this action as an indication of your intention to abandon the job. We have, therefore, terminated you as of 4:45 p.m. on February 23, 1978.
>
> Sincerely,
>
> Hugh D. Ogburn

(Emphasis added.)

At no time did anyone in the Benefits Division attempt to contact Ms. Lachman or to ascertain the reason for her absence on 24 February 1978. Ms. Lachman did visit a doctor on 24 February 1978; he diagnosed her condition as bronchitis with "involvement of the inner ear." She had suffered from bronchitis periodically and as a result of this, she was not able to accumulate sick leave. Ms. Lachman's earlier bouts with bronchitis had depleted her earned sick leave for the first two months of 1978. This was the reason she had no earned sick leave on 23 February 1978. However, she did have sick leave for 1978 which could have been advanced to her to cover an absence.

Ms. Lachman appealed her dismissal through the ESC's departmental grievance procedure. Following final adverse agency decision, she appealed her dismissal to the State Personnel Commission, alleging lack of just cause for her dismissal.

Based on the above Findings of Fact, the hearing officer made the following five Conclusions of Law:

1. Under the authority of North Carolina General Statutes § 126-35 and 37, the State Personnel Commission has jurisdiction to hear and decide Petitioner's [Ms. Lachman] appeal.

2. Respondent [ESC] dismissed Ms. Lachman by letter on February 24, 1978. The letter of dismissal is clear on its face that Respondent dismissed Petitioner for 'abandoning' her employment. Although Ms. Lachman's alleged insubordination is mentioned in the letter of dismissal, that letter is so written that the only reasonable construction which can be made is that Petitioner was dismissed solely for 'abandoning' her employment.

3. Respondent, however, contends that Ms. Lachman, was also dismissed for insubordination. Even if all of Respondent's evidence which was offered on this point is accepted as true, Respondent has not carried its burden of proving an insubordinate act of Petitioner on February 23, 1978. Insubordination is defined in the State Personnel Policy Manual as '[R]efusal to accept a reasonable and proper assignment from an authorized supervisor.' *Employee Relations*, pages 5-6. Insubordination carries the clear implication that the refusal which is the basis of the offense is a willful refusal; that is, the employee was faced with a choice of performing or not performing a given order (without such outside considerations as broken equipment, ill health, unavailability of necessary materials, etc.) and willfully chose not to obey the reasonable order of an authorized supervisor. Respondent has not shown such a willful refusal in this case. At most, Respondent has shown that Petitioner was unable, but did not refuse, to perform the work requested. Being unable to perform a reasonable work order does not denote a refusal or insubordination. Therefore, even if Ms. Lachman had been dismissed for insubordination, which she clearly was not, Respondent did not carry the necessary burden of proof.

4. Respondent had the burden of proving Petitioner 'abandoned' her employment. Had Respondent not dismissed Ms. Lachman on this basis, it would have been possible for Respondent to treat Petitioner's actions as constituting a voluntary resignation without notice. If Ms. Lachman had

then appealed, Petitioner would have had the burden of proving that she did not resign, but had been dismissed instead. However, Respondent chose to dismiss Petitioner, and therefore, must carry the burden of proving that she abandoned her job.

5. This hearing officer is not familiar with the charge that an employee has 'abandoned' his employment. However, it may be assumed that an 'abandonment' is similar to a voluntary resignation. Respondent must prove Ms. Lachman left her employment with the intention not to return. Respondent has shown that Petitioner's actions on February 23, 1978 and February 24, 1978 gave rise to the inference that Ms. Lachman had quit her job. However, this is all that Respondent has shown. When Respondent chose to dismiss Petitioner for 'abandoning' her job, it took on the burden of proving just cause to dismiss Petitioner for this charge. North Carolina General Statutes § 126-35. Just cause requires more proof than an inference, or a conclusion. The burden of proof Respondent must meet is that the greater weight of the evidence must support Respondent's reason for dismissal. While the evidence of Ms. Lachman's actions supports Respondent's charge of job 'abandonment', Petitioner's actions also support her contention that her actions were motivated by her belief that she had been dismissed. It cannot be said that the greater weight of the evidence proves Respondent's charge of job 'abandonment'; the competent evidence gives equal support to the contentions of Respondent and Petitioner. In such a situation, Respondent has failed to carry the burden of proof to establish just cause.

Based on the twenty-nine Findings of Fact and five Conclusions of Law, the hearing officer recommended that the ESC reinstate Ms. Lachman to the same level position from which she had been dismissed, award her her net pecuniary loss, and reinstate all her benefits of employment such as annual and sick leave as if she had not been dismissed.

The ESC gave notice of appeal from this order, and oral arguments were heard on the matter by the full State Personnel Commission at its meeting of 17 August 1979. The Commission adopted the Findings of Fact and Conclusions of Law of the hear-

ing officer as its own and entered essentially the same order as recommended by the hearing officer, with the additional provision that the letter of dismissal serve as a first-level reprimand for Ms. Lachman's conduct of 23 February 1978.

Pursuant to Article 4 of Chapter 150A of the General Statutes, the Administrative Procedure Act, the ESC appealed from the decision of the full Commission to the Superior Court, Wake County. While that court found that the ESC had made numerous exceptions to the Findings of Fact and Conclusions of Law of the hearing officer, it ruled that the appeal presented two primary issues of law for resolution: (1) whether the exclusion of three exhibits offered into evidence at the hearing was error, and (2) whether the record as a whole discloses that the Conclusions of Law are supported by the Findings of Fact.

The court ruled adversely to the Employment Security Commission which then gave notice of appeal to the Court of Appeals. That court, in an opinion filed 2 June 1981, ruled that the State Personnel Commission had no jurisdiction to hear Ms. Lachman's appeal and reversed and remanded the case to the Superior Court with directions that it order the State Personnel Commission to dismiss her appeal. This Court allowed Ms. Lachman's petition for a writ of certiorari on 3 November 1981.

[1] The first question presented by this appeal is whether the State Personnel Commission had jurisdiction to hear Ms. Lachman's grievance appeal. We hold that it did. Therefore, the Court of Appeals erred in dismissing the appeal.

The Commission's jurisdiction was never challenged by either party in the proceedings below. The Court of Appeals ruled *ex mero motu* that the State Personnel Commission lacked jurisdiction because Ms. Lachman had not been continuously employed by the State for five years so as to come within the coverage of Chapter 126 of the General Statutes under which the appeal was brought. *See* G.S. § 126-5(d)(1).

Chapter 126 sets up a system of personnel administration for the State. G.S. § 126-5 defines the class of employees that are covered by the provisions of the chapter. Section 126-5(d)(1) provides:

(d) Except as to the policies, rules and plans established by the Commission pursuant to G.S. 126-4(1), 126-4(2), 126-4(3), 126-4(4), 126-4(5), 126-4(6), 126-7, and except as to the provisions of Articles 6 and 7 of this Chapter, the provisions of this Chapter shall not apply to:

(1) An employee of the State of North Carolina who has not been continuously employed by the State of North Carolina for the immediate five preceding years.

As correctly pointed out by the Court of Appeals, none of the exceptions mentioned in Section (d) apply to the case *sub judice*.

Article 8 of Chapter 126 provides the grievance procedure for State employees when their grievances do not allege discrimination because of age, sex, race, color, national origin, religion, creed, physical disability, or political affiliation. G.S. § 126-34. G.S. § 126-39 provides:

For the purposes of [Article 8], *except for positions subject to competitive service* and except for appeals brought under G.S. 126-16 and 126-25, the terms 'permanent State employee,' 'permanent employee,' 'State employee' or 'former State employee' as used in this Article shall mean a person who has been continuously employed by the State of North Carolina for five years at the time of the act, grievance, or employment practice complained of.

(Emphasis added.)

The Court of Appeals ruled that under this section and G.S. § 126-5(d)(1), Ms. Lachman had to be employed continuously by the State for the five years immediately preceding 24 February 1978 in order to avail herself of the grievance procedures established for State employees in Chapter 126.

Defendant Lachman correctly contends, and the Employment Security Commission conceded in oral argument, that the regulations promulgated under the Administrative Procedure Act make all ESC employees subject to competitive service. 1 N.C.A.C. 8C .0602(b)(1). Therefore, they are exempted from the five-year requirement and are covered by the grievance procedure established by Article 8 of Chapter 126. Indeed, G.S. § 126-39, *supra*, provides coverage for competitive service employees.

While it is true, as the ESC argues, that the record does not show affirmatively that Ms. Lachman was a competitive service employee, it does establish that she worked as a records clerk for the ESC. This Court takes judicial notice, pursuant to G.S. § 150A-64, that employees of the ESC are made subject to competitive service under Rule .0602(b)(1) of Title I of the North Carolina Administrative Code, Chapter 8, Subchapter C, as adopted by the State Personnel Commission, effective 1 February 1976. This Court also takes judicial notice, pursuant to G.S. § 8-4, of the federal statutory requirement of the establishment and maintenance of personnel standards on a merit basis in order for the ESC to qualify for federal funding. 42 U.S.C. § 503(a)(1) (1976); 29 U.S.C. § 49d(b) (1976). Our Legislature has accepted this requirement.

> The Employment Security Commission shall be charged with the duty . . . to do and perform all things necessary to secure to this State the benefits of [the federal act establishing the national employment system]. . . . The provisions of the said act of Congress, as amended, are hereby accepted by this State . . . and this State will observe and comply with the requirements thereof.

G.S. § 96-20.

There were sufficient facts before the hearing officer to establish the jurisdiction of the State Personnel Commission to hear Ms. Lachman's appeal. Contrary to the hearing officer's Conclusion No. 1, *supra*, however, the authority for its jurisdiction was under G.S. §§ 126-34 and 126-39 and not G.S. §§ 126-35 and 126-37.

Having thus determined that the State Personnel Commission had jurisdiction to hear Ms. Lachman's appeal, we must now determine whether the trial court correctly affirmed the decision of the Commission. The defendant contends that the trial court did not err in affirming that decision. On the other hand, the ESC argues that the court erred because, *inter alia*, the hearing officer erroneously (1) concluded that Ms. Lachman was fired *solely* for abandoning her job, (2) excluded certain exhibits and testimony offered into evidence by the ESC, and (3) qualified the definition of *insubordination*.

[2]   The issue presented by the ESC's first contention is whether the conclusion that Ms. Lachman was fired solely for job abandonment is unsupported by substantial evidence in view of the entire record. G.S. § 150A-51(5). *See Overton v. Board of Education,* 304 N.C. 312, 283 S.E. 2d 495 (1981). In ruling on this issue, we must consider all of the evidence, both that which supports the Conclusion of the hearing officer and that which detracts from it. *Thompson v. Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977). "The 'whole record' test does not allow the reviewing court to replace the [Commission's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*" 292 N.C. at 410, 233 S.E. 2d at 541.

We do not agree with the hearing officer's Conclusion that Ms. Lachman was dismissed solely for abandoning her employment (Conclusion No. 2, *supra*). Carl Light testified that he and Mr. Ogburn recommended that Ms. Lachman be dismissed based on her act of insubordination (refusing to either do the assigned work or take sick leave) and the apparent abandonment of her job. Moreover, contrary to the Conclusion of the hearing officer, we believe that the letter of dismissal, *supra*, clearly shows that the dismissal was for *both* insubordination and job abandonment.[2]

Ms. Lachman's contention that if insubordination had been the real reason she was fired, her superiors would not have waited until the next day to fire her is answered in the record by testimony indicating that since Ms. Lachman had walked out on a prior occasion and later called in to request leave, they did not know whether or not she would call in on this occasion. Conclusion No. 2 is not supported by the evidence in the record, and thus must be reversed. The only Conclusion that can be supported by the record is that Ms. Lachman was dismissed for *both* insubordination and job abandonment.[3]

[3]   Secondly, the ESC contends that the hearing officer erred in excluding three exhibits and testimony pertinent thereto relevant

---

2. Since the hearing officer ruled that the ESC had not proved job abandonment, and this ruling was based on substantial evidence, we consider only the ground of insubordination.

3. See footnote 2.

to the issue of insubordination offered by the ESC. We first address the admissibility of Exhibit No. 1, a memorandum to Ms. Lachman from Minda Bunn dated 23 January 1978 which reads as follows:

> Attitude and Language Used in Presence of Accounting Department Personnel.
>
> This will confirm my recent instructions for you to avoid any further contacts with our tax auditors in the Accounting Department. I have been informed that the vulgar language used and attitude shown in the presence of our tax auditors was unacceptable.
>
> Upon the advice of Mr. Ogburn, you are to avoid any further contacts with our tax personnel whether in person or by telephone.
>
> I am requesting that a copy of this report be placed in your personnel folder.
>
> Copy to: Minda Bunn
>            Mr. Ogburn
>            Mr. McGaughey X

Ms. Bunn testified that after Ms. Lachman received this memorandum, she became less cooperative and did not do as much work as she had normally done prior to the memorandum.

The hearing officer ruled this evidence irrelevant and refused to consider it in reaching his decision. While the ESC does not contend that the excluded exhibit and testimony would prove that Ms. Lachman was guilty of insubordination on 23 February 1978, it argues that they tend to show that she had a "recent history of insolence, lack of cooperation with her supervisors, and a bad attitude generally." We agree that as evidence of her continuing insolent behavior toward her supervisor, the testimony and memorandum were relevant to her intentional insubordination on 23 February 1978 and should have been admitted and considered by the hearing officer. *See* 67 C.J.S. Officers § 133 (1978) (insubordination implies a general course of mutinous disrespectful or contumacious conduct).

The hearing officer also ruled that Exhibits Nos. 2 and 3 and the testimony relating to them were irrelevant. Exhibit No. 2 is

an "interoffice communication" dated 29 July 1977 from Minda Bunn to Carl Light concerning Ms. Lachman:

EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

INTEROFFICE COMMUNICATION

DATE: July 29, 1977

TO: Carl V. Light, Assistant Chief of Benefits

FROM: Minda W. Bunn, Clerical Unit Supervisor (V) MB

SUBJECT: Bettie L. Lachman, Records Clerk (III),
       Pos. No. 13280

> This morning when the monthly checks were distributed and Bettie Lachman received the notice that she would not get an increment, she said, 'That damn bitch in yonder kept me from getting my f------ money, I'm' . . . . I then interrupted her and told her to watch her language. She told me, 'You had better watch yours.' I told her that 'You had better shut up.' Nothing further was said by either of us pertaining to the above conversation. She later laid the attached note of apology on my desk. This memo is for whatever action you deem necessary.

> 7-29-77          s/Mr. McGaughey — CVL

Exhibit No. 3 is the note from Ms. Lachman to Minda Bunn referred to in Exhibit No. 2:

> I'm sorry I Out- (Illegible) —*I appoligize*

> But I ain't never been more mad!! 'I get mean when you mess with my green' as Margaret says.

> Can I appeal this in anyway??

Ms. Bunn testified that on 29 July 1977, Ms. Lachman became angry with her and left the work unit, apparently because she did not get a pay raise. The exhibits were written pursuant to this incident. The ESC argues that "for essentially the same reasons" that the hearing officer should have considered Exhibit No. 1 and the testimony relative thereto, he should have considered this testimony and Exhibits 2 and 3. We do not agree.

Exhibit No. 1 and the testimony relating to it were relevant to the issue of insubordination because they showed a recent pattern of an insubordinate and uncooperative attitude on behalf of Ms. Lachman. These exhibits and this testimony relate only to one incident of anger on the part of Ms. Lachman because she failed to receive a pay increase some nineteen months before the act of insubordination at issue. They have no tendency to show Ms. Lachman's insubordination on 23 February 1978, and the hearing officer correctly refused to consider them. However, because of his erroneous refusal to consider Exhibit No. 1 and the testimony pertinent to it, a new hearing must be conducted in this matter. G.S. § 150A-51.

[4] Thirdly, the ESC argues that the hearing officer erred in qualifying the definition of *insubordination* as set out in the State Employee's Handbook, "Refusal to accept a reasonable and proper assignment from an authorized supervisor." (Conclusion No. 3, *supra*) After stating this definition, the hearing officer went on to conclude:

> Insubordination carries the clear implication that the refusal which is the basis of the offense is a willful refusal; that is, the employee was faced with a choice of performing or not performing a given order (without such outside considerations as broken equipment, ill health, unavailability of necessary materials, etc.) and willfully chose not to obey the reasonable order of an authorized supervisor.

While we agree that the refusal which is the basis of the offense is a willful refusal, *see* 44 C.J.S. Insubordination (1945); 67 C.J.S. Officers § 133; 76 Am. Jur. 2d Unemployment Compensation § 55 (1975), we do not agree that in order for the choice not to obey the authorized supervisor's reasonable order to be willful it must be made "without such outside considerations as broken equipment, ill health, unavailability of necessary materials, etc." These considerations are factors in determining whether the order was reasonable, not whether the choice was willful.

The decision of the State Personnel Commission is affected by errors of law (1) in the exclusion of evidence and (2) in the qualification of the definition of *insubordination*. In addition, the Commission's Conclusion that Ms. Lachman was fired *solely* for job abandonment is unsupported by substantial evidence in view

of the entire record. For these reasons there must be a new hearing. G.S. § 150A-51.

The panel below properly reversed the judgment of the trial court and remanded the cause, but for the wrong reason. The decision of the Court of Appeals is modified and the case remanded to that court for further remand to the Superior Court, Wake County, for the entry of an order requiring the State Personnel Commission to conduct, or cause to be conducted, a new hearing consistent with this opinion.

Modified and remanded.