ELIZABETH KANDLER v. THE DEPARTMENT OF CORRECTION

No. 8510SC903

(Filed 6 May 1986)

1. **Master and Servant § 10.1; Public Officers § 12— State employee—discharged for insubordination—not justified**

      The State Personnel Commission erred by concluding that the Department of Correction was justified in discharging the superintendent of a halfway house for level IV female prisoners for insubordination based on a finding that the only specific authority for authorizing two staff members to take an inmate to visit her sick son pertained to emergency leave and that there had not been an emergency leave situation. The Division of Prisons' policies and procedures clearly authorized unsupervised off-site visits between a level IV inmate and that inmate's child, regardless of the child's health. 5 NCAC 2F .0602.

Kandler v. Dept. of Correction

2. **Master and Servant § 10.1; Public Officers § 12— State employee—willful failure to comply with policies and procedures—not supported by substantial evidence**

The State Personnel Commission erred by determining that petitioner was insubordinate in authorizing an inmate trip to attend the wedding of a staff member because it would have been reasonable for petitioner to conclude that 5 NCAC 2F .0602(f)(2) permitted identical activities supervised by professionally trained members of respondent's staff; petitioner testified that she did not believe that a request for permission was required and that it was not necessary to secure permission from the staff member to bring the inmates because they had been invited; and there was uncontradicted testimony that petitioner's immediate supervisor had told her she could do anything she wanted so long as she did not get caught.

3. **Master and Servant § 10.1; Public Officers § 12— halfway house superintendent discharged—not justified**

The State Personnel Commission's conclusion that the superintendent of a halfway house for minimum custody female prisoners was insubordinate and that her discharge was justified was not supported by a finding that the superintendent was aware that Department of Correction policies and procedures applied to halfway houses to the same extent as other facilities; that petitioner had been unsuccessful in attempting to change policies and procedures for halfway houses; that the policies and procedures were reasonable; and that plaintiff could have complied with them or sought guidance from her superiors on resolving conflicts.

4. **Master and Servant § 10.1; Public Officers § 12— discharge of State employee —statement of supervisor—not hearsay**

In the appeal of the discharge for insubordination of the superintendent of a halfway house, the statement of the superintendent's superior that she could do anything she wanted as long as she did not get caught was not hearsay because the issue was whether petitioner willfully failed or refused to comply with known policies and procedures and was admissible not to show the truth of the matter asserted but to show her belief based on her superior's statement.

APPEAL by respondent from *Barnette, Judge.* Judgment entered 24 May 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 16 January 1986.

The respondent has appealed from an order of the superior court. The State Personnel Commission had upheld the dismissal of the petitioner Elizabeth Kandler from her employment with the respondent North Carolina Department of Correction and the superior court reversed the State Personnel Commission.

The petitioner was the superintendent of the Department's Treatment Facility for Women (TFW) in Charlotte from 13 Oc-

tober 1975 until 3 August 1981. The TFW is a minimum custody prison or "halfway house" designed to house female prisoners who are in minimum custody, level IV. On 3 August 1981 the petitioner was notified that she had been suspended from her position pending investigation of charges involving "gross misconduct unbecoming a State officer or employee" and "negligence in the performance of duties." She was informed by letter dated 12 August 1981 that her supervisor had recommended her dismissal as a result of the completed investigation and that the respondent Department of Correction had approved the recommendation. The petitioner appealed that decision to the State Personnel Commission pursuant to G.S. 126-35.

A hearing examiner heard the case and entered an order in which he made findings of fact and conclusions. Based on certain findings of fact he concluded that the dismissal of the petitioner was justified. The State Personnel Commission adopted the findings of fact and conclusions as its own.

Elizabeth Kandler petitioned the superior court for review. The superior court held that considering the whole record there was not sufficient evidence to find facts which would support a conclusion that the petitioner had been insubordinate. It reversed the order of the State Personnel Commission and ordered the Commission to order the petitioner's reinstatement to the same or equivalent position with full back pay. The respondent appealed.

*Ferguson, Stein, Watt, Wallas & Adkins, P.A., by John W. Gresham, for petitioner appellee.*

*Attorney General Lacy H. Thornburg, by Associate Attorney Sylvia Thibaut, for respondent appellant.*

WEBB, Judge.

[1] The appellant contends that the hearing officer made two findings of fact which support conclusions that the respondent was justified in discharging the petitioner. The findings of fact and conclusions were to the effect that the petitioner was insubordinate. The first of these findings of fact is as follows:

11. On September 24, 1980, Petitioner authorized two staff members to transport an inmate in a State vehicle to a hospi-

tal in Raleigh to visit the inmate's sick son. The inmate's son was not critically ill. The only specific authority for such a trip in Respondent's Policies and Procedures is contained in Section .0403(a) pertaining to emergency leave. Since the inmate's son had not died and was not critically ill, the emergency leave provisions did not authorize the trip in question and Petitioner was aware of this. Petitioner did not request or receive authorization from any of her superiors for the trip. She simply used her own judgment in authorizing the trip in order to avoid a possible escape attempt by the inmate.

Based upon this finding of fact the Commission concluded:

6. Petitioner's actions did, however, reach the level of insubordination when she authorized two staff members to transport an inmate to Raleigh to visit her sick son. The State Personnel Manual defines "insubordination" as "refusal to accept a reasonable and proper assignment from an authorized supervisor." As the term is commonly understood "insubordination" also includes willful failure to comply with known reasonable employer policies and procedures. Petitioner knew that Respondent's Policies and Procedures did not authorize the trip in question, because she knew that it was not an emergency leave situation. Petitioner could have requested special permission for the inmate to be transported to Raleigh, but she took it upon herself to authorize the trip, probably because she sensed that the trip would not have been approved by any of her superiors. Petitioner's motives in authorizing the trip may have been good, but the decision was not hers to make. Her willful failure to comply with known policies and procedures amounted to insubordination and justified her immediate dismissal.

The Division of Prisons' Policies and Procedures 5 NCAC 2F Custody and Security .0602 provides in part:

(g) Level IV Outside Activities. Level IV inmates are eligible to participate in all activities approved for level III inmates. Other activities authorized for level IV include:

(1) Off-site unsupervised activities necessary to contact perspective [sic] employers, secure a suitable residence for

use when released on parole or upon discharge, obtain medical services not otherwise available, participate in training programs in the community, *visit or attend the funeral of a* spouse, *child* (including stepchild, adopted child, or child as to whom the prisoner, though not a natural parent, has acted in the place of a parent), parent (including a person though not a natural parent who has acted in place of a parent), brother or sister. (Emphasis added.)

This section on its face clearly authorizes even unsupervised off-site visits between a level IV inmate and that inmate's child, regardless of the child's health. Therefore, the Commission's finding of fact #11, that "[t]he only specific authority for such a trip in Respondent's Policies and Procedures is contained in Section .0403(a) pertaining to emergency leave," is not supported by substantial evidence. Conclusion #6, that the petitioner's authorizing this trip amounted to insubordination, was based upon this erroneous finding. Therefore, conclusion #6 was not supported by substantial evidence in the whole record and could not constitute a basis for upholding the petitioner's dismissal.

[2]   The respondent also contends that the Commission properly determined that the petitioner was insubordinate in authorizing an inmate trip to Statesville to attend the wedding of a TFW staff member. The Commission made the following finding of fact:

17. On February 14, 1981, Barbara Lyon drove the treatment facility's inmates in a State vehicle to Statesville, North Carolina to attend the wedding of one of the facility's program assistants. Petitioner had approved the trip about a week earlier without even submitting a request to her area supervisor, Mr. Ritchie, for authorization. Petitioner never notified the church that the inmates were planning to attend the wedding. Respondent has a policy requiring a unit superintendent to submit a written request to the area supervisor for authorization for inmates to participate in supervised outside group activities such as the attendance of weddings. Respondent's policy further requires prior notification to the sites where such activities are to take place. Petitioner was aware of these policies as she had submitted such requests for authorization on previous occasions.

Based upon this finding of fact the Commission concluded:

12. Petitioner approved the inmates' attendance of a staff member's wedding in Statesville, North Carolina. She did so without requesting authorization for the trip from her area supervisor and notifying the church in advance as required by applicable policies and procedures. Petitioner was aware of the required policies and procedures because she had complied with them in similar situations previously. Her willful failure to comply with known policies and procedures constituted insubordination for which her immediate dismissal was justified.

The "policy" referred to in finding of fact #17 is found in an Administrative Letter written to Staff, Area Administrators, Institution Heads and Unit Supervisors. This letter purports "to clarify the authority under which Managers of the respective facilities within the Division of Prisons may authorize outside activities for inmates under General Statute 148-4." The letter cites the provisions of that statute and then states, among other things, "[a]ll off-site activities under the immediate supervision of qualified correctional personnel other than previously specified off-site work programs must have prior approval of the Area Administrator or Institution Head." However, 5 NCAC 2F .0602(f)(2), which relies upon G.S. 148-4 as its statutory authority, states that "[l]evel IV inmates are eligible to participate in all activities approved for level III inmates." Among the activities approved for level III inmates are "[s]pecific off-site activities under the supervision of approved community volunteers for periods not to exceed six hours, never past 12:00 midnight, on a one-volunteer to one-inmate basis (i.e., volunteer-sponsored training programs to develop inmate social skills, civic club programs, religious and church-related programs, arts, crafts, and sporting events). The respondent's regulations require no prior approval for inmate participation in these non work-related volunteer programs. Because it is unclear exactly what the respondent's policies require for a trip like the wedding trip, it would be reasonable for the petitioner to conclude that 5 NCAC 2F .0602(f)(2) permitted identical activities supervised by professionally-trained members of the respondent's staff.

Furthermore, the petitioner testified that although she had previously submitted requests for permission for inmates to attend outside activities she did not believe such a request was required for this trip. She stated that because the inmates were invited to a staff member's wedding she did not think it necessary to secure permission from that staff member to bring inmates to the wedding. Finally, the respondent's Area Administrator Ritchie, who under 5 NCAC 2A .0100 was required to supervise directly the petitioner's TFW, testified that under the chain of command he had instituted, the petitioner was instead to report directly to Major Nance, a district manager, who in turn reported to Ritchie. Mr. Ritchie stated that "[a]ny superintendent that has—daily is placed upon situations that are not covered in the policy manual." The petitioner also offered uncontradicted testimony that Major Nance, her immediate supervisor, told her she could do anything she wanted so long as she didn't get caught.

In light of the free hand apparently accorded the petitioner in interpreting the respondent's policies and procedures, we do not believe the Commission's conclusion that the petitioner willfully failed to comply with known policies and procedures is supported by substantial evidence in the whole record.

[3] The appellant also relies on the following finding of fact to support the conclusion that the petitioner was insubordinate:

20. During Petitioner's tenure as Correctional Superintendent of the Treatment Facility for Women in Charlotte, Respondent's Policies and Procedures applied to the facility and other halfway houses to the same extent that the Policies and Procedures applied to Respondent's other confinement facilities. Petitioner was aware of this during the time period in question, for she attempted to get the situation changed so that halfway houses could have their own particular policies and procedures to fit their own particular situation and needs. Petitioner and others were unsuccessful in such attempts. Respondent's written Policies and Procedures were to be strictly adhered to by all of Respondent's employees, including halfway house staff members, unless a particular policy or procedure was superceded by an authorized official of the Department. The policies and procedures at issue herein are reasonable and were so during the time period in ques-

tion and Petitioner could have either complied with the policies and procedures or sought guidance from her superiors in resolving possible conflicts in the policies and procedures.

This finding is not specific enough to support a conclusion that the petitioner was insubordinate. It does not show in what way the petitioner violated any rule or regulation.

[4]  At the hearing the petitioner testified that Mr. A. C. Nance, her superior, had told her, "Cookie, I will tell you this. . . . You can do any damn thing you want to. Just don't get caught." The hearing examiner ruled that this was hearsay and that he would not consider it. The superior court ruled that this testimony was admissible and that it would rely on it in its decision. The appellant contends this was error because the court considered hearsay testimony. We believe the superior court was correct in holding this was not hearsay testimony.

The petitioner was dismissed upon charges of insubordination. The issue before the hearing examiner was whether the petitioner willfully failed or refused to comply with known policies and procedures. *Employment Security Commission v. Lachman,* 305 N.C. 492, 290 S.E. 2d 616 (1982). The petitioner's beliefs and motives were relevant to the hearing officer's determination and evidence of statements made by her superior concerning her authority was admissible not to show the truth of the matter asserted but to show Ms. Kandler's belief based on her superior's statements.

Affirmed.

Judges ARNOLD and WELLS concur.