CHARLES FLOYD v. N.C. DEPARTMENT OF COMMERCE

No. 8910SC1033

(Filed 19 June 1990)

**State § 12 (NCI3d) — state employee — dismissal for insubordination — sufficiency of evidence**

There was substantial evidence to support petitioner bank examiner's dismissal for insubordination where it tended to show that petitioner took sick leave one week rather than carry out his assignment to examine consumer finance companies in cities several hours from his home; on one occasion he reported commute time from his field assignment to a doctor in Raleigh and back again as travel time in violation of established policy; and he used regular work hours, during which his next assigned office was closed, to conduct personal business in violation of the established policy on vacation and sick leave.

**Am Jur 2d, Public Officers and Employees §§ 247-250.**

APPEAL by petitioner from judgment entered 5 April 1989 by *Judge A. Leon Stanback* in WAKE County Superior Court. Heard in the Court of Appeals 4 April 1990.

Petitioner Charles Floyd was employed as a Bank Examiner I by the Banking Commission within the North Carolina Depart-

ment of Commerce. His position included examining consumer finance companies across the state for compliance with a variety of state and federal laws and regulations. On the date of his dismissal, Floyd had worked in the Department of Commerce for more than fourteen years.

Reitzel Deaton, Floyd's supervisor, assigned him to examine consumer finance companies in Yadkinville, Wilkesboro and Elkin during the week of 7 April to 11 April 1986. On Monday, 7 April, upon learning of his assignment, Floyd began reviewing the master list of finance companies needing examinations in an effort to stay closer to Raleigh because of illness in his family. Deaton informed Floyd that his field assignment could not be changed. Floyd then met with Mr. Hal Lingerfelt, the Deputy Commissioner of Banks, and Mr. James A. Currie, the Commissioner of Banks. Currie ordered Floyd to proceed with his field assignment or to take sick leave. Floyd took sick leave the afternoon of 7 April and the remainder of that week, 8 April to 11 April.

Petitioner was assigned to examine finance companies in Burlington the week of 14 April 1986. He had approved sick leave on Wednesday 16 April to see his doctor in Raleigh. Floyd commuted from Burlington to Raleigh on 15 April and from Raleigh back to Burlington on 17 April and reported this commute time on his April time sheet as travel time.

The week of 21 April 1986, Floyd was assigned to examine one finance company in Jacksonville and five finance companies in New Bern. Floyd completed his work in Jacksonville at approximately 3:00 p.m. on 21 April and returned to Raleigh rather than continuing to New Bern. On the morning of 22 April, he returned to New Bern before his next assigned office opened at 1:00 p.m. Floyd did not notify the Raleigh office of his return trip to Raleigh on 21 April or his stay in Raleigh on the morning of 22 April.

On 6 May 1986, a pre-dismissal conference was held and on 7 May 1986, Currie notified Floyd in writing that his employment was terminated for failure to carry out his work assignments as directed. The dismissal letter set out Floyd's acts of insubordination as follows:

Monday, April 7, 1986, you were present at a meeting with Mr. Lingerfelt and me to discuss your refusal to perform field assignments for that week. You refused to go to Yadkinville

FLOYD v. N.C. DEPT. OF COMMERCE

[99 N.C. App. 125 (1990)]

that day as required and opted to use leave for the remainder of the week rather than resign. On April 14 and 17, you commuted from Burlington to Raleigh for your personal convenience, traveling during working hours, in violation of this office's long standing policy on commuting and resulting in loss of productive work hours. On April 21 you returned to Raleigh from Jacksonville, without permission or notice, rather than continuing your assignments at New Bern. This resulted in loss of productive work time and your being out of touch with this office; compounded by your moving (without permission) Friday's assignment to Wednesday. Thus your whereabouts for that week were unknown for two days.

Floyd petitioned for and received a hearing before an Administrative Law Judge of the State Personnel Commission. The A.L.J. recommended that the State Personnel Commission uphold respondent's decision to dismiss Floyd for insubordination. The full State Personnel Commission modified several of the A.L.J.'s legal conclusions, but adopted the recommendation that Floyd's dismissal be upheld. Floyd sought judicial review of the Personnel Commission's decision in Wake County Superior Court. From a judgment affirming the decision of the State Personnel Commission, petitioner appeals.

*Genevieve C. Sims for petitioner appellant.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Charles J. Murray, for respondent appellee.*

ARNOLD, Judge.

Petitioner Floyd contends that the superior court judge erred in affirming the State Personnel Commission's decision and order because it was not supported by substantial evidence. A permanent employee subject to the State Personnel Act may only be discharged for just cause. N.C. Gen. Stat. § 126-35. According to State Personnel Commission regulations promulgated pursuant to N.C. Gen. Stat. § 126-35, disciplinary action including dismissal can be imposed on the basis of either job performance or personal conduct. N.C. Admin. Code tit. 25, r.01J.0604. Petitioner was dismissed for personal misconduct in the form of insubordination. Insubordination is a willful failure or refusal to comply with known policies and procedures. *Kandler v. Dept. of Correction*, 80 N.C. App. 444, 451, 342 S.E.2d 910, 914 (1986).

Petitioner Floyd does not contest the agency's findings as to his conduct in April 1986. Rather, he argues that his conduct did not constitute insubordination. Therefore, the question before us is whether there is substantial evidence in the whole record to support the Commission's conclusions that petitioner's conduct constituted insubordination.

Initial judicial review of administrative agency decisions is governed by N.C. Gen. Stat. § 150B-51(b). Under § 150B-51(b)(5), the initial reviewing court, here, the superior court, applies the "whole record" test to determine if the agency's findings and conclusions are supported by substantial evidence in light of the whole record.

Appellate judicial review of the decision of the lower court is governed by N.C. Gen. Stat. § 150B-52. The scope of review to be applied by this Court is the same as for other civil cases. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 531, 372 S.E.2d 887, 890 (1988). Our review is, therefore, limited to determining if the superior court made any errors of law. *Id.* To make this determination, we must decide whether the superior court was correct as a matter of law in holding that the State Personnel Commission's decision and order was supported by substantial evidence in light of the whole record. *See id.*

> The "whole record" test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached. . . . "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987) (quoting *Lackey v. N.C. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) ). Ultimately, the whole record test is a means to determine if the administrative decision had a rational basis in the evidence. *Henderson* at 531, 372 S.E.2d at 890.

The Commission made three conclusions of law that form the basis of its decision to uphold petitioner's dismissal. First, the Commission adopted the A.L.J.'s first conclusion of law, which stated:

The respondent had just cause to dismiss the petitioner for personal misconduct in the form of insubordination on April 7, 1986 when the petitioner willfully refused to accept a reasonable work assignment, to examine certain consumer finance companies in Yadkinville, Wilkesboro and Elkin.

The facts surrounding Floyd's assignment for the week of 7 April and his unsuccessful efforts to convince his superiors to change that assignment are uncontested. Floyd argues, however, that his conduct in not carrying out the assigned work was not a willful failure to comply with known policies and procedures, *Kandler* at 451, 342 S.E.2d at 914, for two reasons. He contends first that Currie, the Commissioner of Banks, gave him the option of proceeding with the assignment or taking sick leave and second, that he had been allowed in the past to change his assignment when he had personal or transportation problems.

Were this question before us for de novo review, we might find, in light of past department practice and Currie's proposal that Floyd take leave rather than going on the assignment, that Floyd's failure to carry out this assignment was not insubordination. However, the "whole record" test is not a tool of judicial intrusion and we are not permitted to replace the agency's judgment with our own even though we might rationally justify reaching a different conclusion. *Henderson* at 535, 372 S.E.2d at 892. There is evidence in the record that both Deaton and Currie told Floyd on the morning of 7 April that his field assignment for that week could not be changed. This statement of current departmental policy is sufficient to support the Commission's conclusion that Floyd's failure to carry out that assignment was insubordination.

Next, the Personnel Commission concluded that petitioner's actions in reporting his commute time on 15 and 17 April as part of his travel time because of approved 'sick leave on 16 April was in violation of established policy. Floyd does not contest that he reported his commute time as travel time, but argues that that action did not violate policy. The Banking Commission's policy on travel time is set out in a March 1984 memo and states in part:

Is commute mileage time to be reported as part of a day's travel time?

Yes, on official commutes (either from Raleigh or an official lodging location) . . . . Commutes for your own convenience also should not be reflected as travel time.

The policy regarding "commutes for your own convenience" does not explicitly state its application to circumstances where an employee has approved midweek sick leave in Raleigh during a week he is assigned to another part of the state. However, the Personnel Commission could reasonably conclude that a commute to visit a doctor was for the employee's personal convenience within the meaning of the policy and therefore that Floyd's actions in reporting his commute time as travel time was in violation of established policy.

Finally, the Personnel Commission concluded that petitioner's absence without approved leave from his work stations in Jacksonville and New Bern on 21 and 22 April constituted personal misconduct. Floyd does not contest that he returned to Raleigh from Jacksonville on the afternoon of 21 April and did not arrive in New Bern until 11:00 a.m. on 22 April. He argues that department policy allowed examiners to use unproductive time, such as the morning of 22 April when his next assigned office was closed, for personal business. The Banking Commission's policy on vacation and sick leave is set out in a March 1984 memo and provides formal procedures for requesting leave time. Whether formal policy on leave was strictly followed in situations where an examiner had several hours before an office opened, as occurred on 22 April, is unclear. However, the Personnel Commission could reasonably conclude from the March 1984 memo that Floyd violated policy by conducting personal business during work hours without approved leave.

We hold that the Superior Court did not err in affirming the State Personnel Commission's decision and order, which was supported by substantial evidence in light of the whole record.

Affirmed.

Judges LEWIS and DUNCAN concur.