WEBB v. N.C. DEPT. OF ENVIR., HEALTH, AND NAT. RESOURCES

[102 N.C. App. 767 (1991)]

R. KENT WEBB, Petitioner v. NORTH CAROLINA DEPARTMENT OF EN-
VIRONMENT, HEALTH AND NATURAL RESOURCES, COASTAL
RESOURCES COMMISSION, Respondent

No. 905SC282

(Filed 7 May 1991)

1. **Administrative Law and Procedure § 44 (NCI4th) — rejection
of administrative law judge's findings — reasons sufficient**

The Coastal Resources Commission did not err in re-
jecting an administrative law judge's recommended decision
regarding a bulkhead. Although petitioner argued that the
Commission's generalized assertion that the evidence does not
support "several" of the administrative law judge's findings
was insufficient to comply with N.C.G.S. § 150B-51(a), the statute
does not require a point-by-point refutation of the administrative
law judge's findings and conclusions. The reasons stated here
were quite specific and went to the heart of the case.

**Am Jur 2d, Administrative Law §§ 158 et seq.**

2. **Administrative Law and Procedure § 44 (NCI4th) — permit
for bulkhead — Coastal Resources Commission decision —
evidence sufficient**

An order of the Coastal Resources Commission permitting
a specific bulkhead placement was supported by testimony
of an Assistant Director, a field representative, and a pro-
fessor, despite the presence of conflicting evidence. Further-
more, the order was not arbitrary or capricious since the
conclusion that the bulkhead alignment was consistent with
CAMA standards was also well based.

**Am Jur 2d, Administrative Law §§ 167, 172.**

3. **Waters and Watercourses § 7 (NCI3d) — bulkhead — mean high
water — determination**

The evidence supported a Coastal Resources Commission
finding that a bulkhead alignment approximated mean high
water where there was testimony that "mean high water"
was determined based on the presence of natural indicators
and observation of an actual high tide rather than a survey
of mean high water. No particular method for locating mean
high water has been established.

**Am Jur 2d, Administrative Law §§ 167, 172.**

APPEAL by petitioner from order entered 20 December 1989 by *Judge Ernest B. Fullwood* in NEW HANOVER County Superior Court. Heard in the Court of Appeals 11 December 1990.

The Division of Coastal Management (Division) granted Terry Turner, Inc. (Turner) a Coastal Area Management Act (CAMA) Major Development/Dredge and Fill Permit to construct a bulkhead to stabilize shoreline erosion of a residential lot on Banks Channel in Wrightsville Beach, North Carolina. The permit, issued under the CAMA general permit standards for bulkhead construction pursuant to Title 15 of the N.C. Administrative Code, now Title 15A, authorized Turner to construct the bulkhead at or landward of the alignment staked by the Division approximately one foot landward of the surveyed mean high water line as identified on the application. Immediately after receiving the permit Turner constructed the bulkhead approximately one foot landward of the alignment staked by the Division and two feet landward of the surveyed mean high water line. The petitioner, R. Kent Webb, who owns the residential lot immediately south of the Turner lot, appealed the issuance of the permit by requesting a contested case hearing before the Office of Administrative Hearings. After the hearing Administrative Law Judge Beecher R. Gray issued a recommended decision in which it was concluded that the permit authorized the bulkhead to be constructed waterward of the mean high water line in violation of coastal management rules and recommended that the Coastal Resources Commission (Commission) modify the permit to require that the bulkhead be removed and reconstructed several feet landward of the originally permitted alignment.

The Commission, after reviewing the evidence, rejected the Administrative Law Judge's recommended decision and upheld the permitted bulkhead alignment; and this decision when reviewed by the New Hanover County Superior Court was affirmed.

*Parker, Poe, Adams & Bernstein, by Charles C. Meeker and John J. Butler, for petitioner appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Robin W. Smith, for respondent appellee.*

PHILLIPS, Judge.

In appealing from the Superior Court's affirmance of the Commission's decision, the appellant petitioner in effect makes three

contentions. None has merit and we affirm the order of the Superior Court.

[1]  Petitioner's first contention is that the Commission's decision rejecting the Administrative Law Judge's recommended decision is erroneous as a matter of law because the reasons stated for rejection are either not specific or manifestly inaccurate. In making this contention, and the next one as well, petitioner fails to take into account the conflicts in the evidence and the Commission's prerogatives to determine the credibility of witnesses and the weight of evidence, and to find facts therefrom. *State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau*, 300 N.C. 381, 269 S.E.2d 547, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980). When an agency does not adopt an Administrative Law Judge's recommended decision, G.S. 150B-51(a) requires that the reviewing court determine whether the agency's decision stated "specific reasons" why it did not and if the court determines the agency did not state specific reasons it shall reverse the decision or remand the case to the agency to enter the specific reasons. The Commission adopted as its rationale for declining to adopt the Administrative Law Judge's recommended decision the reasons set forth in petitioner's Exceptions to the Administrative Law Judge's Proposed Decision dated 18 May 1989, which are not a part of the record before us, and two additional reasons of its own:

> 1. The greater weight of the evidence in the record as a whole does not support several of the Administrative Law Judge's findings of fact. Some of the findings rely on evidence that was not properly weighted in view of the totality of the evidence; other findings contain selective statements of fact and fail to reflect the record as a whole. One of the key findings of fact—the finding that DCM staff relied on the surveyed mean high water line to establish the permitted bulkhead alignment—has no real basis in the record and directly contradicts the testimony of DCM staff as to the origin of the DCM alignment.

> 2. The basic premises of the Recommended Decision are flawed in that the Administrative Law Judge framed the issue as a conflict between the surveyed mean high water line and a mean high water line based on natural indicators. The uncontroverted evidence is that CAMA Major Development/Dredge and Fill Permit 181-88 authorized bulkhead construction at

an alignment staked by DCM staff based on observation of the high water level on the property and did not authorize construction at the surveyed MHW line; the permitted alignment was approximately one (1) foot landward of the surveyed MHW line and the bulkhead was constructed approximately one foot landward of the permitted alignment.

The court determined that: "In compliance with NCGS 150B-36, the agency's final decision states the specific reasons why the agency did not adopt the Administrative Law Judge's recommended decision." Petitioner argues that the Commission's generalized assertion that the evidence does not support "several" of the Administrative Law Judge's findings of fact is insufficient to comply with the requirements of G.S. 150B-51(a), as the particular findings of fact are not identified and no explanation is given why they are not supported. But the statute does not require a point-by-point refutation of the Administrative Law Judge's findings and conclusions and the reasons stated, the flawed premises of the recommended decision as to the mean high water line, are quite specific indeed and go to the heart of the case.

[2]  Petitioner's next contention is that the Commission's findings of fact, conclusions of law and final decision are not supported by substantial evidence in view of the entire record and that the order is arbitrary and capricious. The standard for judicial review is set forth in G.S. 150B-51(b), which states in pertinent part:

> [T]he court reviewing a final decision may affirm . . . or remand . . . . It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
>                          . . .
>
> (5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

In reviewing the Commission's decision for the errors cited, the court properly applied the "whole record" test. *Brooks, Commissioner of Labor v. Rebarco, Inc.*, 91 N.C.App. 459, 372 S.E.2d 342 (1988). The "whole record" test takes into account the specialized expertise of the staff of the administrative agency, *High Rock*

*Lake Association, Inc. v. North Carolina Environmental Management Commission*, 51 N.C.App. 275, 276 S.E.2d 472 (1981), does not allow the reviewing court to substitute its evaluation of the evidence for that of the agency, *Clark Equipment Co. v. Johnson*, 261 N.C. 269, 134 S.E.2d 327 (1964), and requires the court to look at the entire record and determine if substantial evidence exists to support the agency's decision. *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 95 L.Ed. 456 (1951). Petitioner's argument that the Commission's "key finding that the permitted bulkhead was aligned at mean high tide is unsupported by substantial evidence in view of the entire record as submitted" has no basis. Supporting the finding is the testimony of Assistant Director Preston Pate, field representative C. Robert Stroud, Jr., and Dr. Paul Hosier, Professor of Biological Sciences at UNC-Wilmington, as to the location of the bulkhead alignment. That this testimony was contradicted by that of Dr. Bruce Kenney, a research associate at Duke University Marine Lab, is immaterial in view of the Commission's prerogatives as finder of the facts. Since the record supports the Commission's finding that the bulkhead alignment approved by the Division approximates mean high water the conclusion that it is consistent with CAMA standards is also well based, and the further argument that the order is arbitrary and capricious fails.

[3] Petitioner's final contention is that the Division's determination of approximate mean high water based on observation or high tide during a single inspection of the site was erroneous as a matter of law. CAMA regulations require only that a bulkhead alignment for the purpose of shoreline stabilization "must approximate mean high water or normal water level." 15A N.C. Admin. Code 7H.0208(b)(7)(A). The term "mean high water" is not defined by the regulations, nor is its method of computation prescribed. In the context of property ownership, our Supreme Court defined the term as "a mean or average high-tide, and not as the extreme height of the water," *Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach*, 277 N.C. 297, 303, 177 S.E.2d 513, 516 (1970), but did not indicate what method should be used to locate "mean high water." Both Assistant Director Preston Pate and DCM field consultant Robert Stroud testified that DCM practice, in applying coastal management rules, is to determine the approximate location of MHW based on the presence of natural indicators of high water and observation of actual high tide rather

than to rely on a survey of mean high water. In the present case, Mr. Stroud, who has assisted in the alignment of approximately 2000 bulkheads on North Carolina's estuarine shoreline, staked the approved Turner bulkhead alignment based on his observation of conditions on the site and particularly the location of high water on the property at the time of the site visit. No particular method for locating "mean high water" having been established, we are of the opinion and so hold that this evidence supports the Commission's finding that the bulkhead alignment in fact "approximates mean high water."

Affirmed.

Judges EAGLES and WYNN concur.