GLENDA DAVIS, Appellant v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, O'BERRY CENTER, Appellee

No. 928SC372

(Filed 6 July 1993)

1. **State § 12 (NCI3d)— State employee—excessive mileage on van—misuse of State property**

     The State Personnel Commission did not commit an error of law by holding that appellant's excessive mileage was a misuse of State property which constituted just cause for dismissal where appellant was employed at the O'Berry Center in Goldsboro; appellant was assigned in 1988 to drive three of the Center's residents on a lunch trip to a nearby Burger King to enhance their interactive and social skills; appellant improperly included a fourth resident; one of the residents acted in a disruptive manner on the way to lunch; appellant

and the teacher accompanying her decided to cancel the lunch excursion and had the residents eat their lunch in the van; appellant then decided to take the residents sightseeing and drove toward Kinston; appellant contended that she turned around at a particular restaurant; the mileage on the van when appellant returned was 58 miles; the teacher stated that appellant had driven the van to a mobile home sales lot where she talked with a sales representative for approximately ten minutes; and O'Berry managers investigated and determined that the odometer reading to and from the mobile home lot would be almost exactly 58 miles while the mileage to and from the restaurant would have been significantly less. There is no doubt that appellant's act of driving the State van 46 miles out of the way to conduct personal business at a mobile home sales lot falls within the purview of misusing State property and evidence was presented that appellant planned to visit the mobile home park even before the trip began, so that the abuse was knowingly committed. There was also no error in characterizing the conduct as personal, which can result in immediate dismissal, even though appellant asserts that there are no written guidelines concerning deviations during field trips and that no one had been disciplined for other deviations. N.C.G.S. § 126-35.

**Am Jur 2d, Civil Service § 61; Public Officers and Employees § 247.**

2. **Administrative Law and Procedure § 69 (NCI4th) — dismissal of State employee — State Personnel Commission — sufficiency of evidence**

Substantial evidence existed in the record to justify the State Personnel Commission's decision to reject the administrative law judge's opinion and dismiss a State employee who used a State van for personal business while taking O'Berry Center residents on a field trip. Even though the administrative law judge had already made findings of fact and conclusions of law, the Personnel Commission had the ability to make its own findings and conclusions if it chose to do so, and this is exactly what the Commission chose to do when it added an additional conclusion of law finding one witness's rendition of the facts to be more consistent with the other evidence. Even though this statement should have been characterized

DAVIS v. N.C. DEPT. OF HUMAN RESOURCES

[110 N.C. App. 730 (1993)]

a finding rather than a conclusion, it was clearly within the power of the Commission.

**Am Jur 2d, Administrative Law §§ 678 et seq.**

Judge JOHNSON dissenting.

Appeal by appellant from judgment and order signed 31 December 1991 by Judge J. R. Strickland in Wayne County Superior Court. Heard in the Court of Appeals 11 March 1993.

*Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., by Geraldine Sumter, for appellant.*

*Attorney General Lacy H. Thornburg, by Associate Attorney General Jane L. Oliver, for the State.*

LEWIS, Judge.

The main issue presented by this appeal is whether the trial court erred in upholding the State Personnel Commission's dismissal of Glenda Davis (hereafter "appellant"). On the facts before us, we hold that substantial evidence was presented in the record to warrant appellant's dismissal for personal misconduct and we affirm the decision of the trial court.

The evidence presented below tended to show that appellant was employed at the O'Berry Center in Goldsboro, as a Health Care Technician II. Appellant had worked at the O'Berry Center for three and a half years and had not received any prior disciplinary action. However, on 21 January 1988, appellant and Kim Middleton ("Middleton"), a teacher at the O'Berry Center, were assigned to drive three of the Center's residents in a State owned van on a lunch trip to a nearby Burger King. The purpose of such trip was to enhance the residents' interactive and social skills by allowing them to purchase their own food and to eat in a restaurant. Without permission, appellant improperly included a fourth resident on the trip. On the way to lunch, one of the residents acted in a disruptive manner that frustrated the purpose of the trip. As a result appellant and Middleton decided to cancel the lunch excursion to the Burger King and instead had the residents eat their lunch in the van. Since the lunch trip had been cut short, appellant decided to take the residents sightseeing. According to appellant, she then proceeded to drive the State van toward Kinston, where she turned around at the Sandpiper Restaurant and returned

to the O'Berry Center. When appellant returned to the O'Berry Center, the odometer in the van revealed that she had driven 58 miles, whereas the trip to the Burger King should have only covered 12 miles.

Upon returning to the Center, Middleton was late for a 1:00 class. This was communicated to Valnolia Cox, an administrator at the Center, who inquired of Middleton as to the reason for her tardiness. Middleton told Cox that appellant had driven the van to a mobile homes sales lot where she talked to a sales representative for approximately ten minutes before returning to the Center. Cox undertook her own investigation into the matter and had the route retraced. Managers from the O'Berry Center concluded that if appellant had turned around at the Sandpiper Restaurant, then her total mileage would have been significantly less than 58 miles. In contrast, however, had appellant driven to the mobile home sales lot and returned, then the total mileage would have been almost exactly 58 miles.

On the basis of this investigation, Cox concluded that appellant had knowingly misused State property in violation of the Personal Conduct section of the State Personnel Manual. Appellant was dismissed without warning effective 9 January 1988 for her misconduct.

Following established procedures, appellant then filed a petition with the Office of Administrative Hearings to have her case reviewed. Although, the State contends that appellant's petition was not timely filed because it lacked a verification, the administrative law judge disagreed and conducted a full hearing on the merits. The administrative law judge issued her Recommended Decision on 18 August 1989 with findings of fact and conclusions of law that appellant had used poor judgment in logging the excessive mileage. The administrative law judge also concluded that the testimony of Middleton and appellant was inconsistent, but perceived appellant to be more credible. However, since the evidence was in such conflict, the administrative law judge ultimately concluded that the State had failed in its burden of proof and that appellant should be reinstated with back pay.

This case came before the Full State Personnel Commission on 20 June 1990. The Personnel Commission adopted all of the findings of fact made by the administrative law judge as well as the majority of the administrative law judge's conclusions of law.

However the Personnel Commission specifically declined to accept the administrative law judge's recommended decision and ordered that appellant's dismissal be upheld.

A Petition for Judicial Review was filed in the Superior Court of Wayne County on 26 July 1990. The Superior Court upheld the decision of the State Personnel Commission, concluding that substantial evidence existed in the record to support appellant's termination. Appellant has appealed to this Court.

---

When reviewing the decision of a Superior Court judge in his review of an administrative decision, this Court must determine "whether the trial court failed to properly apply the review standard articulated in N.C. Gen. Stat. § 150B-51." *Walker v. North Carolina Dep't of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 353, *disc. rev. denied*, 328 N.C. 98, 402 S.E.2d 430 (1990). In addition, this Court's review is further limited to those errors and exceptions which have been assigned to the superior court's order. *Id.* N.C.G.S. § 150B-51 (1991) provides:

(b) Standard of Review.— After making the determinations, if any, required by subsection (a), the court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted, or

(6) Arbitrary or capricious.

If it is alleged that an error of law occurred, then the proper standard of review is *de novo*. *Walker*, 100 N.C. App. at 502, 397 S.E.2d at 354. If however, the decision is challenged as being con-

trary to the evidence, or arbitrary or capricious, then the whole record test is used. *Id.* It is not clear whether appellant has challenged the sufficiency of the evidence to support the Personnel Commission's decision or whether she has alleged that the Personnel Commission committed an error of law. Therefore, in our discretion, we have undertaken both a *de novo* review of the Personnel Commission's conclusions of law, as well as a review of the whole record to determine whether sufficient evidence existed to support appellant's termination for just cause.

## A.

[1] The only possible error of law which appellant could have challenged is the Personnel Commission's conclusion that appellant's excessive mileage was a misuse of State property and constituted just cause for dismissal. Pursuant to N.C.G.S. § 126-35 (1991), a permanent state employee, subject to the State Personnel Act, may not be dismissed for disciplinary reasons except for just cause. To aid in the disciplinary process, the State Personnel Manual divides conduct into two categories: 1) inadequate performance of duties (job performance); and 2) personal conduct detrimental to State service (personal conduct). *See Jones v. Dep't of Human Resources*, 300 N.C. 687, 268 S.E.2d 500 (1980). The advantage of having conduct classified as job performance is that an individual is entitled to three warnings before being terminated. In order to help agencies in the classification of action and behavior for disciplinary purposes, the State Personnel Manual includes several examples of job performance and personal conduct. Under personal conduct it states that: "An employee who steals State Property or funds, or who knowingly misuses State Property may be dismissed without warning under the Personal Conduct disciplinary process."

We perceive no ambiguity in the interpretation of this part of the Personnel Manual. There is no doubt that appellant's act of driving the State van 46 miles out of the way to conduct personal business at a mobile home sales lot falls within the purview of misusing State property. However, it is not enough that appellant misused State property; the misuse must have been knowingly, committed. Evidence was presented to show that appellant planned to visit the mobile home park even before the trip began. During the Center's own investigation, it was revealed that appellant had told a co-worker that she planned to drive to Kinston. This com-

pletely contradicted appellant's explanation that she did not decide to take the sightseeing expedition until one of the residents acted in a disruptive manner. Therefore, we feel that it was proper for the Commission to hold that appellant misused State property and that she did so knowingly.

Appellant has attempted to blur the distinction between personal conduct and job performance by stating that there were no written guidelines concerning deviations during off-campus field trips. Further, appellant asserts that many deviations had taken place on other field trips and that no one else had been disciplined for excessive mileage. It is important to note, however, that of the other cases of excessive mileage, none exceeded eleven miles and all were accounted for by reasonable explanations. If we were to accept appellant's argument that her actions were related to job performance and not personal conduct, then any individual who misused State property while performing a work related activity could never be terminated for misuse of State property. The State Personnel Manual recognizes that there may be some gray areas between personal conduct and job performance. Even if this is the case, appellant's personal journey was such that her actions and behavior crossed the line of being job related and into the realm of personal conduct. The fact that she had residents in the van and was supposed to take them on a field trip was only tangentially related to her true and improper purpose. We therefore hold that no error of law occurred in characterizing appellant's conduct as personal.

B.

[2] We have also undertaken an examination of the whole record to determine whether substantial evidence exists in the record to support the Commission's ruling. Substantial evidence has been defined as that which a reasonable mind would accept as adequately supporting a particular conclusion. *Walker*, 100 N.C. App. at 503, 397 S.E.2d at 354. In examining the whole record, even the evidence that detracts from the agency's decision must be considered. *Id.* The whole record test is not to be a tool of judicial intrusion. *Floyd v. North Carolina Dep't of Commerce*, 99 N.C. App. 125, 392 S.E.2d 660, *disc. rev. denied*, 327 N.C. 482, 397 S.E.2d 217 (1990). Even though a different result could be justified, the reviewing court is not permitted to substitute its judgment for that of the agency, as between two reasonably conflicting views of the

evidence. *Id.* We have conducted our own review of the record and conclude that substantial evidence exists to support the Personnel Commission's decision.

In this case, the Personnel Commission adopted all the findings of fact made by the administrative law judge and most of the administrative law judge's conclusions of law. However, the Personnel Commission rejected the administrative law judge's recommended decision. It is well established that an agency has the ability to reject the recommended decision of an administrative law judge. *See Webb v. North Carolina Dep't of Environmental Health and Natural Resources,* 102 N.C. App. 767, 404 S.E.2d 29 (1991). However, to do so the Personnel Commission was required to state its reasons for rejecting the administrative law judge's decision. *See* N.C.G.S. § 150B-51(a). The trial court specifically found that the Personnel Commission justified its reasons and after reviewing the record, we agree.

The prerogative to determine the weight of the evidence and the credibility of the witnesses, and to determine the facts therefrom, rested with the State Personnel Commission. *See Webb,* 102 N.C. App. at 769, 404 S.E.2d at 31. In refusing to accept the administrative law judge's recommended decision, the Personnel Commission was merely exercising its prerogative to weigh the evidence and to determine the credibility of the witnesses. Even though the administrative law judge had already made findings of fact and conclusions of law, the Personnel Commission had the ability to make its own findings of fact and conclusions of law if it chose to do so. *See Jarrett v. North Carolina Dep't of Cultural Resources,* 101 N.C. App. 475, 400 S.E.2d 66 (1991). This is exactly what the Personnel Commission chose to do when it added an additional conclusion of law, finding Middleton's rendition of the facts to be more consistent with the other evidence. This is evidenced by the language in the Commission's conclusion that at "the Calgary Mobile Home lot, identified by Ms. Middleton as the place [appellant] visited, the odometer read 29 miles (the halfway point of a 58 mile roundtrip) and was more consistent with Ms. Middleton's explanation of the trip. . . ." Although this statement about credibility should have been characterized as a finding of fact instead of a conclusion of law, it was clearly within the power of the Personnel Commission to make its own determination about the credibility of the witnesses.

Even though we find the result in this case to be unfortunate, we cannot say that the Personnel Commission erred in concluding that appellant was dismissed for just cause. We hold that substantial evidence existed in the record to justify the Personnel Commission's decision. As a result, the judgment of the superior court is affirmed. Having resolved this matter in favor of the State, we see no need to address the State's cross assignment of error.

Affirmed.

Judge JOHN concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

The majority opinion holds that "appellant's act of driving the State van 46 miles out of the way to conduct personal business at a mobile home sales lot falls within the purview of misusing State property" and is related to job conduct which does not entitle appellant to three warnings which are allowed in instances of job performance. I, however, disagree with the majority opinion, and would hold that the appellant did not steal or knowingly misuse State property and was improperly discharged without warnings and without just cause.

The record clearly shows that many deviations had taken place on other field trips and no one else had been disciplined for excessive mileage. The majority points out "that of the other cases of excessive mileage, none exceeded eleven miles and all were accounted for by reasonable explanations." Because, however, there were no written guidelines concerning deviations during off-campus field trips and no one else had been disciplined for excessive mileage, I find it unfair and unjust to discipline appellant in the instant case. But for this incident, appellant had an irreproachable work record. Accordingly, I would hold that this incident falls within the purview of job performance; therefore, appellant was entitled to three warnings before dismissal. I would further hold that the State is estopped from disciplining appellant since other instances of excessive mileage were undisciplined and there were no written guidelines on field trip deviations.