NANCY YARBROUGH ALLEN, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, Respondent

No. COA01-1129

(Filed 31 December 2002)

## 1. Nurses—nurse aide—abuse—verbal threat—elderly nursing home resident

The trial court did not err in an action arising out of the alleged abuse of an elderly nursing home resident by affirming the Department of Health and Human Services' (DHHS) finding of fact that petitioner nurse aid threatened the nursing home resident after the resident hit petitioner, because: (1) petitioner has failed to include a copy of the Administrative Law Judge's recommended decision, the record shows the trial court reviewed the official record and weighed its contents, and our Court of

Appeals will not speculate and assume error where none appears; (2) even if the recommended decision was properly included in the record, the decision is only advisory and an agency such as DHHS is vested with full authority to accept or reject any or all of the findings of fact and conclusions of law contained in a recommended decision; (3) there was substantial evidence to support the subject finding when another nurse aid who was present at the time of the incident immediately reported the incident, testified regarding the incident, and maintained the same story; (4) contrary to petitioner's assertion that the trial court erred by making its own finding of fact regarding petitioner's statement, the trial court's finding was merely a recapitulation of DHHS's finding; (5) the evidence was probative of the ultimate issue of whether petitioner abused the nursing home resident; and (6) petitioner has failed to show prejudice.

**2. Nurses—nurse aide—abuse—threat of violence—elderly nursing home resident—mental anguish**

A de novo review revealed that the trial court did not err by concluding that petitioner nurse aid abused an elderly nursing home resident within the meaning of 42 C.F.R. § 488.301, because: (1) though the record disclosed various accounts of the exact statement made to the resident by petitioner, the evidence is uncontroverted that petitioner made some statement of a threatening nature to her patient; and (2) while there was no evidence of record that petitioner's threats resulted in physical harm or pain to the patient, petitioner's threat to do violence to the elderly Alzheimer's patient is sufficient evidence from which a rational factfinder could determine it was such as to cause that patient mental anguish.

Appeal by petitioner from order entered 6 August 2001 by Judge A. Leon Stanback, Jr. in Orange County Superior Court. Heard in the Court of Appeals 10 June 2002.

*Daniel F. Read and Maria J. Mangano, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorneys General June S. Ferrell and Jane L. Oliver, for respondent-appellee.*

BIGGS, Judge.

This appeal arises out of the entry of a finding of abuse of a patient by petitioner (Nancy Allen) a certified nurse aide, in the Nurse

Aide Registry and the Health Care Personnel Registry. The evidence tends to show that petitioner and Misty Gray, another nurse aide, were transferring a nursing home resident, M.M., (the resident's initials are used in this opinion to preserve her right to privacy under N.C.G.S. § § 131D-2(b)(4) and -21(6)), from her wheelchair to a shower chair for a bath, when M.M. became combative and hit petitioner on the hand. After the transfer was made, Gray went to the sink to wash her hands. As petitioner was removing M.M.'s sock, M.M. kicked her. In response, petitioner said, "If you kick me, I will knock the f—king hell out of you." Gray turned around and observed M.M. kicking petitioner's legs. Gray finished washing her hands, and exited the room to report petitioner's actions to Staff Development Coordinator Nurse Mariel Ramos. Later that day, petitioner approached Gray and asked, "You told didn't you?" Gray denied having reported the incident and told petitioner that Ramos had been standing outside of the shower room door when the incident occurred.

Ramos subsequently informed Susan King, the Director of Nursing, of the incident. After King confirmed Ramos' account of the incident with Gray, King went to the patient's unit to further investigate. King examined M.M. and although she noted some old bruises, she did not observe any new injuries. King's attempts to interview M.M., who had been diagnosed with Alzheimer's and seemed confused, were unsuccessful. King then held a meeting with petitioner, to obtain her version of the incident. Ramos and Robin Phillips, the Assistant Director of Nurses, were also present at this meeting. When confronted with the allegation that she had cursed M.M. in violation of nursing home policy, petitioner responded, "That's a damn lie." Petitioner indicated that she knew that it was Gray who had reported her. When King revealed that Gray told her that petitioner had threatened to "knock the fu—king hell out of [M.M.]," petitioner denied making such a statement. Petitioner explained that M.M. kicked at her and in response she said, "You've kicked the hell out of my hand and, if you kick me again, I'm going to have to pinch your foot off." King admonished petitioner, explaining that she considered the allegation to be very serious. She reiterated to petitioner that staff was not permitted to curse or threaten residents of the nursing home. In response to King's request, petitioner submitted a written statement of the incident, in which she said that M.M. tried to kick her, and that she told M.M., "You knocked the hell out of my hand. Quit trying to kick me. If you kick me in the face, I don't know what I will have to do to you."

ALLEN v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[155 N.C. App. 77 (2002)]

King reported the incident to Health Care Personnel Registry Section (hereinafter "the HCPR section") of the Department of Health and Human Services, Division of Facility Services (DHHS). Bonnie Nottoli, R.N., an investigator for the HCPR section, was assigned to investigate the matter. During her investigation, Nottoli interviewed petitioner, King, Phillips, Ramos, and Betty Stevens, a former Quality Assurance Director and Administrator at the nursing home who had previously worked with petitioner. When interviewed by Nottoli, petitioner told her that the statement she made to M.M. was, "If you kick me in the face, little girl, I just don't know what I might have to do to you." Notolli also reviewed various nursing home documents pertinent to the incident. The investigator was unable to locate Gray for an interview.

Based upon the information obtained during Nottoli's investigation, the HCPR section concluded that on 12 August 1999, petitioner verbally abused M.M. by stating, "You've kicked the hell out of me and if you do it again I'll have to pinch your foot off." By letter dated 13 March 2000, the HCPR section notified petitioner that an allegation of abuse had been substantiated against her, and that the substantiated allegation would be entered into the Nurse Aide Registry and the Health Care Personnel Registry.

Petitioner filed a petition for a contested case hearing in the Office of Administrative Hearings to appeal the agency's decision on 24 March 2000. A hearing was conducted before an Administrative Law Judge (ALJ) on 24 May 2000. The ALJ recommended that the HCPR section's decision be upheld. Both petitioner and the HCPR section filed exceptions to the recommended decision, whereupon DHHS issued a final decision, affirming the HCPR section's determination that petitioner abused M.M. on the morning of 12 April 1999. Petitioner petitioned the Orange County Superior Court for judicial review, pursuant to N.C.G.S. § 150B-45. After hearing the arguments of counsel and reviewing the evidence of record, the superior court affirmed the final decision of DHHS. Petitioner appeals.

This Court must now review the superior court's order for errors of law. *Crowell Constructors, Inc. v. N.C. Dep't of E.H.N.R.*, 107 N.C. App. 716, 719, 421 S.E.2d 612, 613 (1992), *disc. review denied*, 333 N.C. 343, 426 S.E.2d 704 (1993). In conducting such review, we first " 'determine whether the trial court exercised the proper scope of review,' " and then " 'whether the trial court correctly applied this scope of review.' " *Jordan v. Civil Serv. Bd. of Charlotte*, 137 N.C. App. 575, 577, 528 S.E.2d 927, 929 (2000) (quoting *Whiteco Outdoor*

*Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999)). The appropriate standard of review turns upon the nature of the error asserted by appellant. "If appellant argues that the agency's decision was based on an error of law, then '*de novo*' review is required. If, however, appellant questions (1) whether the agency's decision was supported by the evidence, or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test." This Court's scope of review "is the same as that utilized by the trial court." *Wallace v. Board of Tr.*, 145 N.C. App. 264, 274, 550 S.E.2d 552, 558, *disc. review denied*, 354 N.C. 580, 559 S.E.2d 553 (2001).

" '*De novo*' review requires a court to consider a question anew, as if not considered or decided by the agency." *Dorsey v. UNC-Wilmington*, 122 N.C. App. 58, 62, 468 S.E.2d 557, 559, *cert. denied*, 344 N.C. 629, 477 S.E.2d 37 (1996). In conducting *de novo* review, "[t]he court may freely substitute its own judgment for that of the agency." *Dorsey*, 122 N.C. App. at 62, 468 S.E.2d at 559 (citation omitted). Conversely, " '[th]e "whole record" test does not allow the reviewing court to replace the [Agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*.' " *North Carolina State Bar v. Nelson*, 107 N.C. App. 543, 550, 421 S.E.2d 163, 166 (1992) (quoting *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977)), *aff'd*, 333 N.C. 786, 429 S.E.2d 716 (1993). Indeed, the 'whole record' test requires only that the trial court " 'examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by 'substantial evidence.' " *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994)).

By her first, second, fourth, and eighth assignments of error, petitioner contends that (1) the superior court erred in affirming the DHHS's sixth finding of fact; (2) the court's review was limited to issues of law, and therefore, the court erred in making its own factual findings, and (3) the sixth finding of fact did not form the basis of the court's decision, and therefore, the finding was "irrelevant and unduly prejudicial."

These assignments of error and arguments require application of the "whole record" test, which the record reveals was the standard employed by the superior court. We next determine whether the supe-

rior court properly applied the "whole record" test in its review of DHHS's final order.

[1] DHHS's sixth finding of fact was as follows:

> On August 12, 1999 while Ms. Gray and Petitioner were transferring Resident M.M. from her wheelchair to the shower chair, the resident became combative and hit Petitioner on the hand. Petitioner responded to the resident by stating, "If you kick me, I will knock the f—king hell out of you." Ms. Gray promptly reported the incident to Ms. Phillips and Ms. King.

Petitioner contends that DHHS erred in making such a finding (and, in turn, that the superior court erred in affirming that finding) because the ALJ failed to make such a finding in his recommended decision. We note, however, that petitioner has failed to include the ALJ's recommended decision to facilitate review of this contention, in violation of N.C.R. App. P. 9(a)(2).

It is well settled that the appellant has the duty to see that the record on appeal is properly compiled, and to make error appear on the face of the record. *Tucker v. General Tel. Commission. of the Southeast,* 50 N.C. App. 112, 118, 272 S.E.2d 911, 915 (1980). Absent such a showing, this Court must presume that the tribunal below ruled properly. *State v. Alston,* 307 N.C. 321, 341, 298 S.E.2d 631, 645 (1983). In the instant case, where petitioner has failed to include a copy of the ALJ's recommended decision, and the record shows that the superior court reviewed the official record in this case, and weighed its contents, we will not speculate and assume error where none appears. *See State v. Williams,* 274 N.C. 328, 333, 163 S.E.2d 353, 357 (1968) ("An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court[]").

Further, even if the recommended decision were properly included in the record, and it revealed that, as petitioner contends, the ALJ did not include the subject finding in his recommended decision, we note that a recommended decision is only advisory. *See Gray v. Orange County Health Dep't,* 119 N.C. App. 62, 72, 457 S.E.2d 892, 899, *disc. review denied,* 341 N.C. 649, 462 S.E.2d 511 (1995) (G.S. § 150B-43 provides only judicial review of *final* agency decisions, and recommended decisions of the ALJ and State Personnel Commission were merely advisory); *see also Davis v. N.C. Dept. of Human Resources,* 110 N.C. App. 730, 737, 432 S.E.2d 132, 136 (1993) ("an agency has the ability to reject the recommended decision of an

administrative law judge"). "Even though the administrative law judge ha[s] already made findings of fact and conclusions of law, the Personnel Commission ha[s] the ability to make its own findings of fact and conclusions of law if it cho[oses] to do so." *Id.* An agency (in this case DHHS), as the ultimate factfinder, is vested with full authority to accept or reject any or all of the findings of fact and conclusions of law contained in a recommended decision of an administrative law judge, and make its own findings and conclusions. *Eury v. N.C. Employment Security Comm'n,* 115 N.C. App. 590, 597, 446 S.E.2d 383, 388, *disc. review denied,* 338 N.C. 309, 451 S.E.2d 635 (1994). Accordingly, DHHS cannot be said to have erred in making finding of fact #6, and the superior court cannot be said to have erred in affirming that finding, merely because the finding was not made by the ALJ.

More importantly, after reviewing the record as it is before us, we conclude that there was substantial evidence to support the subject finding. Petitioner denied having made such a statement during the nursing home's internal investigation and the HCPR section's subsequent investigation. However, Gray, who was present at the time of the 12 August 1999 incident, immediately reported the incident to her superiors at the nursing home. In addition, Gray testified regarding the incident. At all times, she maintained that petitioner threatened to "knock the f—cking hell out of [M.M]," if M.M. kicked her. In light of this evidence, we conclude the superior court did not err in affirming DHHS's sixth finding of fact.

As to petitioner's argument that the superior court erred in making its own finding of fact regarding the statement made to M.M. during the 12 August 1999 incident, we note that the superior court's finding was merely a recapitulation, as is permitted, of DHHS's finding of fact #6. The court was merely reiterating this finding in the course of conducting a *de novo* review of petitioner's claim that DHHS committed an error of law in concluding that petitioner abused M.M. *See Jordan,* 137 N.C. App. at 577, 528 S.E.2d at 929 (providing that it is the superior court's duty to "make its own findings of fact and conclusions of law" when conducting *de novo* review).

Finally, we reject petitioner's argument that finding of fact #6 was irrelevant and highly prejudicial. Rule 401 of the Rules of Evidence defines relevant evidence as that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. N.C.G.S. § 8C-1, Rule 401. As discussed earlier,

there was competent evidence in the record to support the finding and it was certainly probative of the ultimate issue of whether petitioner abused M.M. In addition, petitioner has failed to demonstrate prejudice. These assignments of error are, therefore, overruled.

[2] By her seventh and final assignment of error, petitioner argues that the superior court erred in concluding that petitioner abused M.M. Petitioner contends that, as a matter of law, petitioner's statement to M.M. is not sufficiently egregious to constitute abuse.

As acknowledged by petitioner, the issue presented by this assignment of error is one requiring *de novo* review, since petitioner asserts that the court's decision was legally infirm. The record shows that the superior court utilized *de novo* review in addressing this issue on appeal from DHHS's final decision, and therefore, we are left only to determine if the court properly applied that standard. We look then at DHHS's decision to determine whether an error of law was committed. *See In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) ("Where the trial court should have utilized *de novo* review, this Court will directly review the agency's decision under a *de novo* review standard[]").

The 12 August 1999 incident was investigated by the HCPR section, in accordance with N.C.G.S. § 131E-255 and 131E-256. *See* N.C.G.S. § 131E-255-257 (2001) (enacted following Congressional passage of the Omnibus Budget Reconciliation Act of 1987, 42 U.S.C. § 1395(c) *et seq.*). Federal regulations require that states list substantiated findings of abuse, neglect and misappropriation of resident property by nurse aides in their respective state registries. 42 C.F.R. § 483.156. In order to participate in Medicare and Medicaid programs, federal regulations require that health care facilities comply with a federal prohibition against hiring any nurse aide who has a finding of abuse, neglect, or misappropriation of property on the Nurse Aide Registry. 42 C.F.R. § 483.13(c)(1)(II)(B).

For purposes of investigating complaints of abuse, the HCPR section has adopted the federal definition of abuse:

"Abuse" means the willful infliction of injury, unreasonable confinement, intimidation, or punishment with resulting physical harm, pain or mental anguish.

42 C.F.R. § 488.301 (incorporated by reference at 10 N.C.A.C. 3B.1001(1)). Petitioner contends that the "single isolated, albeit unwise and ill-advised remark" spoken·by her to M.M. on 12 August

1999 could not have been intended to constitute "abuse," under 42 C.F.R. § 488.301, as incorporated by reference at 10 N.C.A.C. 3B.1001(1). The State, however, submits that such a position is wholly unsupported by any case or statutory law. In fact, the State references 42 U.S.C. § 1395i-3(g)(1)(D), in support of a contrary position. The State posits that this particular section of the United States Code, which allows nurse aides who have a single finding of neglect to apply to have that finding removed, supports a conclusion that Congress did intend that a single incidence of abuse be listed in the registry. We note also that neither the absence of threatening gestures or physical contact by the nurse aide, or the victim's awareness of resulting physical harm or mental anguish, is dispositive. The cases referenced by petitioner in support of arguments to the contrary involve either physical contact or different definitions of abuse, and are, therefore, neither instructive nor persuasive. As noted by the Health Care Financing Administration, in responding to a public comment that there should be a requirement that a long-term care resident actually perceive the conduct as abusive:

> We do not accept this comment. Our obligation is to protect the health and safety of every resident, including those who are incapable of perception or are unable to express themselves. *This presumes that instances of abuse of any resident, whether cognizant or not, cause physical harm, pain or mental anguish.*

59 F.R. § 56130 (1994) (emphasis added). While petitioner's behavior might not be the most egregious instance of abuse, like the District of Columbia Court of Appeals in *Hearns v. District of Columbia Dep't of Consumer & Regulatory Affairs*, we believe that in the context of this extremely regulated profession and the patient's dependency on a person in the trusted position of nurse aide, "the definition of 'abuse' . . . may fairly be understood to reach behavior short of more flagrant forms dealt with in other settings." 704 A.2d 1181, 1183 (1997).

In the instant case, the DHHS made the following findings:

1. At all times relevant to this contested case, Petitioner, a certified nurse aide, . . . was employed as a health care personnel at Sunbridge Nursing Home.

2. Sunbridge is a nursing home facility licensed by the State of North Carolina and as such is a health care facility as defined in N.C. Gen. Stat. § 131E-256(b)(6).

3. At all times relevant to this matter, Misty Gray was employed as a CNA at Sunbridge.

4. At all times relevant to this matter, Susan King was employed as the Director of Nurses at Sunbridge.

5. At all times relevant to this matter, Robin Phillips was employed as the Assistant Director of Nurses at Sunbridge.

6. On August 12, 1999, while Ms. Gray and Petitioner were transferring Resident M.M. from her wheelchair to the shower chair, the resident became combative and hit Petitioner on the hand. Petitioner responded to the resident by stating, "If you kick me, I will knock the f—king hell out of you." Ms. Gray promptly reported the incident to Ms. Phillips and Ms. King.

7. On behalf of Sunbridge, Ms. Phillips and Ms. King conducted the in-house investigation with respect to the allegation of abuse by Petitioner to Resident M.M. During the investigation, Ms. Phillips and Ms. King confronted Petitioner about the reported allegation of abuse. Petitioner denied making the statement, "If you kick me, I will knock the f—king hell out of you." Petitioner admitted to Ms. Phillips and Ms. King that she made the following statement to Resident M.M: "You kicked the hell out of me, if you do it again I'm going to pinch your damn foot off."

8. At the conclusion of the conference, it was requested that Petitioner provide a written statement of the incident. Petitioner testified that she provided a written statement to Sunbridge and the content of the statement which she made to Resident M.M. was as follows: Petitioner admitted making the following statement to M.M., "If you kick me in the face, I don't know what I might have to do."

9. On August 12, 1999, Ms. King submitted a report to the Health Care Personnel Registry Section which alleged that Petitioner had abused M.M.

10. Respondent reviewed the report submitted by Sunbridge with respect to the allegation of abuse and concluded that the allegation warranted investigation.

11. On behalf of Respondent, Bonnie Nottoli, investigated the allegation of abuse. As part of her investigation, Ms. Nottoli interviewed Petitioner. Petitioner denied making the statements as reported by Ms. Gray, Ms. Phillips and Ms. King. During it's inves-

tigation, Respondent determined that Petitioner verbally abused Resident ("M.M.") by saying to her, "You've kicked the hell out of me and if you do it again, I'll have to pinch your foot off."

12. By letter date[d] March 13, 2000, Respondent notified Petitioner that the Department had substantiated an allegation of abuse against Petitioner and that the substantiated finding would be entered into the Nurse Aide Registry and Health Care Personnel Registry. . . .

13. "Abuse" is defined by 42 CFR Part 488 Subpart E which is incorporated by reference, in 42 CFR 488.301, as follows:

"Abuse" means the willful infliction of injury, unreasonable confinement, intimidation, or punishment with resulting physical harm, pain or mental anguish.

Based upon these findings, DHHS reached the following pertinent conclusions:

3. The North Carolina Department of Health and Human Services, Division of Facility Services, Health Care Personnel Registry Section is required by N.C. Gen. Stat. § 131E-255 to maintain a Registry that contains the names of all nurse aides working in nursing homes who are subject to a finding by the Department that they abused a nursing home resident.

4. As a certified nurse aide, Petitioner is subject to the provisions of N.C. Gen. Stat. § 131E-255.

5. The North Carolina Department of Health and Human Services, Division of Facility Services, Health Care Personnel Registry Section is required by N.C. Gen. Stat. § 131E-256 to maintain a Registry that contains the names of all health care personnel working in health care facilities who are subject to a finding by the Department that they abused a resident in a health care facility or who have been accused of abusing a resident if the Department has screened the allegation and determined that an investigation is warranted.

6. As a health care personnel, Petitioner is subject to the provisions of N.C. Gen. Stat. § 131E-256.

7. Sunbridge, a nursing home, is a health care facility as defined in N.C. Gen. Stat. § 131[E]-256(b)(6).

8. On August 12, 1999, Petitioner abused Resident M.M. when she stated to her, "You've kicked the hell out of me, and if you do it again, I'll have to pinch your foot off."

9. Respondent did not err in substantiating the finding of abuse against Petitioner.

DHHS then determined that a finding of abuse against petitioner had been properly listed in the Nurse Aide Registry and the Health Care Personnel Registry. We note that the superior court's findings and conclusions are essentially a restatement of those of DHHS.

Looking at this matter anew, as we are required to do on *de novo* review, we conclude that the superior court did not err in affirming DHHS's determination that petitioner abused M.M. Though the record discloses various accounts of the exact statement made to M.M. by petitioner, the evidence is uncontroverted that petitioner made some statement of a threatening nature to her patient M.M. While there was no evidence of record that petitioner's threats resulted in physical harm or pain to M.M., petitioner's threat to do violence to the elderly Alzheimer's patient is certainly sufficient evidence from which a rational factfinder could determine it was such as to cause that patient "mental anguish." *See Hearns v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 704 A.2d 1181, 1183 (1997) (reaching the same conclusion where nurse aide roughly pulled and rebuked an elderly patient, but there was no evidence to show that patient suffered physical harm or pain). Accordingly, we conclude that DHHS properly determined that petitioner's actions constituted abuse within the meaning of 42 C.F.R. § 488.301 (as incorporated by reference at 10 N.C.A.C. 3B.1001(1)). Therefore, the superior court did not err in affirming the decision of DHHS.

Having so concluded, the order of the superior court is affirmed.

Affirmed.

Chief Judge EAGLES and Judge WALKER concur.