DOUGLAS A. TUCKER v. GENERAL TELEPHONE COMPANY OF THE SOUTH-EAST

No. 8014SC342

(Filed 16 December 1980)

**Arbitration and Award § 7; Master and Servant § 10.2— allegedly wrongful discharge of employee — grievance arbitrated — summary judgment for employer proper**

> In an action to recover damages for the alleged wrongful suspension or discharge of plaintiff from his employment with defendant, the trial court properly entered summary judgment for defendant where defendant's materials established that, except for a bargaining agreement, plaintiff's contract of employment was for an indefinite period of time, terminable at the will of either party; defendant suspended plaintiff for cause, these causes being substantiated by plaintiff's deposition; defendant had the right to suspend plaintiff conditioned or circumscribed only by the provisions of the collective bargaining agreement; plaintiff had previously initiated a grievance under the collective bargaining agreement disputing defendant's right to suspend him; the grievance culminated in arbitration; the decision of the arbitrator denied plaintiff's grievance; and arbitration of the grievance was final and binding on the parties.

APPEAL by plaintiff from *McKinnon, Judge.* Judgment entered 31 October 1979 in Superior Court, DURHAM County. Heard in the Court of Appeals 8 October 1980.

Plaintiff, an employee of defendant telephone company, brought this action seeking damages for the alleged wrongful suspension or discharge of plaintiff from his employment with defendant. The essential allegations in the complaint are as follows. Plaintiff was employed with defendant as a PBX (private branch exchange) installer. On or about 18 November 1977, defendant wrongfully suspended or discharged plaintiff and terminated his pay. The basis for plaintiff's wrongful suspension or discharge was a warrant for his arrest charging receipt of stolen property, issued by officers of the Durham Police Department. The charges were false and were dismissed on or about 26 October 1978. As a result of his wrongful discharge or suspension, plaintiff lost one year of wages, was embarrassed, and his reputation in the community was slandered.

In its answer, defendant admitted plaintiff's employment and that one of the reasons for plaintiff's suspension was the criminal charges against him, but denied that the suspension was wrongful.

As a further defense, defendant alleged that defendant's employees are represented by a labor union and that plaintiff is a member of the union. The union contract with defendant provides for a four step grievance procedure, culminating in arbitration. Under the agreement, arbitration of a grievance is final and binding on defendant, the union and employees who are members of the union. Following his suspension, plaintiff filed a grievance which went to arbitration. The arbitrator found plaintiff's suspension to be justified. Defendant pleaded the arbitration and award in bar of the plaintiff's claim.

After the pleadings were joined, defendant moved for summary judgment, which motion was granted by the trial court. It is from this judgment that plaintiff has appealed.

*Maxwell, Freeman, Beason & Lambe, P.A., by James B. Maxwell, for plaintiff appellant.*

*Newsom, Graham, Hedrick, Murray, Bryson & Kennon, by William P. Daniell, for defendant appellee.*

WELLS, Judge.

Plaintiff's sole assignment of error is to the trial court's granting of defendant's motion for summary judgment. On motion for summary judgment, the question before the court is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c); *Page v. Sloan,* 281 N.C. 697, 704, 190 S.E. 2d 189, 193 (1972). This burden may be carried by a movant by proving that an essential element of the opposing party's claim is nonexistent or by showing through discovery that the opposing party's claim is nonexistent or by showing through discovery that the opposing party cannot produce enough evidence to support an essential element of his claim. *Moore v. Fieldcrest Mills, Inc.,* 296 N.C. 467, 470, 251 S.E. 2d 419, 421 (1979); *Zimmerman v. Hogg & Allen,* 286 N.C. 24, 29, 209 S.E. 2d 795, 798 (1974). The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in

Tucker v. Telephone Co.

advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed. *Moore v. Fieldcrest Mills, Inc., supra; Caldwell v. Deese,* 288 N.C. 375, 378, 218 S.E. 2d 379, 381 (1975). *See also Gregory v. Perdue, Inc.,* 47 N.C. App. 655, 657, 267 S.E. 2d 584, 586 (1980).

Plaintiff having asserted a cause of action for wrongful discharge or suspension of employment, and defendant having raised defenses to plaintiff's alleged cause of action, the question before the trial court on defendant's motion for summary judgment was whether defendant was successful in showing that plaintiff's claim was unfounded or had a fatal weakness.

In support of its motion, defendant presented the affidavit of F. C. White, defendant's vice president for personnel. White's affidavit stated that plaintiff was suspended from his position with defendant because plaintiff failed to cooperate with a company investigation, plaintiff had felony charges pending against him and adverse publicity was being generated by those charges, and plaintiff failed to comply with instructions by leaving his assigned work site without informing his supervisor. White also stated that at the time plaintiff was suspended there was a collective bargaining agreement in effect between defendant and the International Brotherhood of Electrical Workers, Local 289, and that plaintiff was a member of that union. Although White stated that certain articles of the collective bargaining agreement were attached to his affidavit as an exhibit, these articles were not included in the record on appeal.

Defendant also presented the deposition of plaintiff, in which he testified in pertinent part as follows:

I filed this Complaint alleging that I had been wrongfully discharged or suspended by General Telephone Company after I had been arrested by the Durham Police officers for Unlawfully and Wilfully Receiving Stolen Property. I filed suit because I didn't do anything wrong. I am a member of a union and am aware that there is a union contract at GTE. I followed four steps of the Grievance Procedure, which included an arbitration hearing. The arbitrator's award did not require GTE to rehire me.

. . . .

At the time I was a PBX installer with GTE, which is

basically, private business telephone exchanges. They are in banks and computer communications. We are able to pull up accounts by this system at various terminals within a bank.

In addition, I had worked on telephone lines at the police department and specifically, the police information network. . . . In my position I had authority to go into the main switchline at GTE's offices downtown and I had access to the police station's central communication office through security.

There are many burglar alarm systems in private homes around Durham that in some form do go through the central communications room at the police department and as a PBX installer, I had access to the room where those terminals were involved. I could monitor telephone conversations or telephone lines. If you are able to acquire access to the police communication network, you could monitor all telephone lines coming into the police department.

. . . There were some articles in the *Durham Morning Herald* concerning the Bills of Indictment which were secretly entered and the articles discusses [*sic*] the arrest of my brother and myself and our operation of TNT Auto Sales. There was also an article in *Durham Sun*. . . . The article in the *Sun* also indicated that the FBI was conducting a ten-state investigation involving myself and my brother.

. . . .

My supervisor and M. B. Henry first came to see me after the arrest when I was at Star Buick. They wanted to go to my car and have a little meeting. I refused to talk with them at that time. . . .

. . . .

Earlier that day I had been to Stem, North Carolina. I had been assigned to go to Star Buick but I found they didn't need my services and so I was helping another routeman find a better route to go to Stem to work on Public Service's meter service out there. I don't believe I let my supervisor know where I was going at that time. I do not generally do this, but once in a blue moon, I do. I travel so much that there is no way I can stop to call my supervisor and tell him exactly where I have to go. I don't believe

I ever told another employee that I had gone to Stem at that time. I had a paging system and am paged continually by the company. I believe that I told somebody at the time I went to Stem, "Man, if they want me, tell them I ain't here." They paged the man I was with and asked for me and I told them [*sic*] to tell them that I wasn't there, because it was almost 4:30 when I was anticipating getting back to work and I didn't intend to work past 4:30. I do not remember discussing that incident with the representatives at GTE at the first meeting. I do understand that they gave the other employee a reprimand for telling the paging service that he hadn't seen me.

        . . . .

        . . . [T]he company told me there had been adverse publicity as a result of my arrest. They indicated to me that they were going to suspend me and that one of the reasons for this was the adverse publicity. I believe another reason they were going to suspend me was because of the indictment and arrest on the criminal charges. I was told that I was being suspended without pay, pending the resolution of the criminal charges.

        Under the Grievance Procedure outlined in our union contract with the company, there is a grievance procedure. I believe that I made a first step grievance complaint to my immediate supervisor. The company didn't determine that I did not have a valid grievance. After that, I went to the second step and it was also determined there that I should not go back to work. I then went to the third level and was denied at that point as well. I believe I got a letter that told me my grievance had been denied. After that, I went to arbitration, which is the fourth and last step. There was an independent arbitrator who was here to hear that grievance. The company was represented by Mr. Tye and I was represented by a Mr. Lansden. Mr. Lansden made argument for me and examined witnesses called on my behalf. . . .

        As a result of the arbitration hearing, the arbitrator denied my grievance. This was the same thing that had been done at the other three levels. A copy of that opinion is entitled "In the matter of Arbitration between General Telephone Company of the Southeast and International Brotherhood of Electrical Workers, Local 289". I was the grievant. On the very last page, the arbitrator made the statement: "For the reasons described

Tucker v. Telephone Co.

herein, the Grievance is denied.''

. . . .

The charges were ultimately dropped and I returned to work at the same job that I had been at and with the same seniority as before. I did not file any other grievances, but in fact filed this lawsuit after my return. . . .

I have a copy of the Articles of Agreement between General Telephone Company of the Southeast and Local Union 289, IBEW-AFL-CIO, which is effective March 27, 1977. All four stages of the grievance procedures, which included the arbitration, have denied grievance.

These materials establish that except for the bargaining agreement, plaintiff's contract of employment was for an indefinite period of time, terminable at the will of either party. *See Freeman v. Hardee's Food Systems,* 3 N.C. App. 435, 165 S.E. 2d 39 (1969) and cases cited therein. It also is clear from White's affidavit that defendant suspended plaintiff for cause (these causes being substantiated by plaintiff's deposition), and that defendant had the right to do so, conditioned or circumscribed only by the provisions of the collective bargaining agreement.

If plaintiff had a contract of employment pursuant to the terms of the collective bargaining agreement, upon which he might prosecute an action for wrongful suspension or discharge, such a claim could be grounded, if at all, only in the terms of that agreement. Defendant's materials showed that plaintiff initiated a grievance under that agreement disputing defendant's right to suspend him, that the grievance culminated in arbitration, and that the decision (award) of the arbitrator denied his grievance.

Under the provisions of G.S. 95-36.8[1]/, such an award is final and binding on the parties to the arbitration proceedings. It is, therefore

---

[1]/  § 95-36.8. Enforcement of arbitration agreement and award.--(a) Written agreements to arbitrate labor disputes, including but not restricted to controversies relating to wages, hours and other conditions of employment, shall be valid, enforceable and irrevocable, except upon such grounds as exist in law or equity for the rescission or revocation of any contract, in either of the following cases:
(1) Where there is a provision in a collective bargaining agreement or any other contract, hereafter made or extended, for the settlement by arbitration

clear that defendant was successful in showing to the trial court that plaintiff's claim was either unfounded or had a fatal defect and that defendant was entitled to judgment as a matter of law.

In his brief, plaintiff asserts that the arbitrator's award was favorable to plaintiff on the issue of his entitlement to "back wages" and that because his action was to enforce the award, summary judgment was in error. In the alternative, plaintiff argues that if the issue of "back wages" was not addressed and resolved by the award, the trial court should have stayed the action instead of entering judgment because the issue of "back wages" was subject to further arbitration. In his attempt to support these arguments, plaintiff has quoted what he asserts to be certain portions of the award. We note that although it clearly appears from the record that the trial judge had the award before him during his consideration of defendant's motion, the award was not included in the record on appeal. It is the duty of the appellant to see that the record is properly prepared and transmitted. *Hill v. Hill,* 13 N.C. App. 641, 642, 186 S.E. 2d 665, 666 (1972).

> [W]hen the appealing party fails to include in the record on appeal all of the materials that the trial court had before it in ruling on the motion for summary judgment, this Court is unable to say that the trial court erred in determining that there was no genuine issue as to any material fact.

*Leasing, Inc. v. Dan-Cleve Corp.,* 31 N.C. App. 634, 638, 230 S.E. 2d 559, 561-62 (1976), *disc. rev. denied,* 292 N.C. 265, 233 S.E. 2d 393 (1977).

The judgment of the trial court is

Affirmed.

Chief Judge MORRIS and Judge VAUGHN concur.

of a controversy or controversies thereafter arising between the parties;
(2) Where there is an agreement to submit to arbitration a controversy or controversies already existing between the parties.
(b) Any arbitration award, made pursuant to an agreement of the parties described in subsection (a) of this section and in accordance with this Article, shall be final and binding upon the parties to the arbitration proceedings.