WILLIAM BRUCE COLLINS, Plaintiff v. ST. GEORGE PHYSICAL THERAPY, Defendant

No. COA99-1421

(Filed 19 December 2000)

**1. Negligence— permanent injury—sufficiency of evidence**

The trial court did not err by refusing to submit the issue of permanent injury to the jury in a negligence action arising from an injury suffered when a cable on a weight machine broke during physical therapy. A permanency instruction is proper if there is sufficient evidence of the permanent nature of any injuries and proximate cause; in this case, the medical witnesses were certain in their responses but the evidence did not fully address permanency as it left open the question of whether plaintiff's symptoms could abate with treatment. Plaintiff also pointed to non-expert testimony, but an expert witness must testify with reasonable medical certainty from personal examination, knowledge of the history of the case, or a hypothetical question where injuries are subjective, as with pain.

**2. Damages— punitive—willful or wanton conduct—sufficiency of evidence**

The trial court did not err by directing a verdict for defendant on a punitive damages claim arising from an injury suffered when a cable on a weight machine broke while plaintiff was undergoing physical therapy. While the evidence indicates that defendant may have been negligent in deviating from customary standards in caring for the machine, it does not rise to the level of willful or wanton conduct.

**3. Appeal and Error— denial of Rule 60 motion—absence of final order**

The Court of Appeals was without authority to address plaintiff's contention that the court erred by denying his Rule 60 motion for relief from judgment where the record did not contain a final order denying plaintiff's motion for relief from judgment. A judgment is properly entered through composition of an order, which must be reduced to writing, signed by the judge, and filed with the clerk of court. N.C.G.S. § 1A-1, Rule 58.

**4. Appeal and Error— cross-appeal—assignments of error— statement of legal basis**

A cross-appeal was dismissed where the assignments of error did not state a legal basis upon which error was assigned. N.C. R. App. P. 10(c)(1).

Appeal by plaintiff and cross-appeal by defendant from order entered 16 April 1999 by Judge Marcus Johnson and orders entered 30 April 1999, 20 May 1999 and judgment entered 5 May 1999 by Judge Charles C. Lamm, Jr. in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 October 2000.

*Robinson, Bradshaw & Hinson, P.A., by Edward F. Hennessey, IV, for the plaintiff-appellant.*

*Waggoner, Hamrick, Hasty, Monteith and Kratt, P.L.L.C., by S. Dean Hamrick and John W. Bowers, for the defendant-cross appellant.*

LEWIS, Judge.

On 15 February 1996, plaintiff was injured while using a multiple use high pulley machine manufactured by Universal Gym Equipment, Inc. ("Universal"). The injury occurred at St. George Physical Therapy, where plaintiff was a patient. Plaintiff was undergoing a course of physical therapy at St. George Physical Therapy to relieve problems with his right shoulder associated with rotator cuff surgery plaintiff underwent in December 1995. Plaintiff was injured while pulling down on a bar which was attached by a metal cable running through pulleys and attached to weights at the other end. The cable was covered in a plastic sheath. As plaintiff pulled down on the bar to lift the eighty pounds of weight at the other end, the metal cable broke through the plastic coating and the bar came loose from the cable, striking plaintiff on the top and back side of his head. After applying ice to his head and undergoing an examination by Rick E. St. George ("St. George"), plaintiff's physical therapist, plaintiff continued his therapy for that day.

On 16 October 1996, plaintiff instituted an action against St. George Physical Therapy, alleging pain and permanent physical injuries including limited mobility in his neck and shoulder and numbness with tingling in his hand and arm proximately caused by the incident on 15 February 1996. From a jury verdict for plaintiff in the amount of $26,333, plaintiff appeals.

**[1]** The plaintiff in this case filed a written request that the jury be instructed as to damages for permanent injury, future pain and suffering, future medical expenses and lost future earnings, which the trial court denied. Plaintiff contends on appeal that the evidence warranted an instruction as to the permanency of plaintiff's injuries.

The trial court is required to instruct on a claim or defense if the evidence, viewed in the light most favorable to the proponent, supports a reasonable inference of such claim or defense. *Matthews v. Food Lion, Inc.*, 135 N.C. App. 784, 785, 522 S.E.2d 587, 588 (1999). Before a jury may consider permanence of injuries as an element of damages, there must be evidence tending to show

> the permanency of the injury and that it proximately resulted from the wrongful act with reasonable certainty. While absolute certainty of the permanency of the injury and that it proximately resulted from the wrongful act need not be shown to support an instruction thereon, no such instruction should be given where the evidence respecting permanency and that it proximately resulted from the wrongful act is purely speculative or conjectural.

*Short v. Chapman*, 261 N.C. 674, 682, 136 S.E.2d 40, 47 (1964). Thus, a permanency instruction is proper if there is sufficient evidence both as to (1) the permanent nature of any injuries and (2) proximate cause. *Matthews*, 135 N.C. App. at 785, 522 S.E.2d at 588.

As to the first requirement of permanency, deposition testimony of Dr. Ronald C. Demas, M.D. was admitted as follows:

Q. Doctor, you mentioned that you were aware [plaintiff] had had a microdiscetomy following this accident?

A. Yes.

Q. That was a surgery to remove some ruptured material, herniated material from the disc?

A. That's correct.

Q. Assuming his symptoms are as he reported them to you, why would his symptoms continue after that surgery?

A. That's a common occurrence, frankly, and there is, at best, speculation. I don't think anyone knows the exact answer . . . .

Q. Based on [plaintiff's] history and your own experience, in your opinion, are his symptoms likely to simply go away? That is, whatever mechanism is producing these symptoms, is that likely to stop operating *of itself*?

A. No. In terms of going away, I wouldn't say that . . . . And we say at some point a patient reaches maximum medical improvement, MMI. That means that at some point he's probably not going to get substantially better, but he may continue to get better over the years by as much as three percent a year . . . . There's a potential, I think, for this patient eventually to be minimally or negligibly bothered by this problem. But whether it will take another year or six years, no one can guess.

(Demas Depo. at 11-14) (emphasis added). Plaintiff also contends the testimony of John Jacob Priester, D.C., fulfills the requirement of permanency:

Q. Well, do you believe, based on your experience and your evaluation of [plaintiff] that his symptoms are likely to abate on their own *without treatment*?

A. No, I don't think his symptoms are going to go away *on their own*.

(Priester Depo. at 21).

We find this evidence equivocal as to the permanency of plaintiff's injury. Though each witnesses was certain in his response, the question asked elicited evidence only as to whether plaintiff's "symptoms" or the "mechanism producing those symptoms" would go away "*of itself*" or "*on their own without treatment*." (Demas Depo. at 14; Priester Depo. at 21). This evidence does not fully address the question of permanency, as it leaves open the question of whether plaintiff's symptoms could potentially abate *with* treatment. In addition, Dr. Demas stated there was a mere "potential" that plaintiff would be "negligibly bothered" by the problem in the future. (Demas Depo. at 14). Without more, this evidence indicates that permanency of plaintiff's injuries could possibly occur. *See, e.g., Gillikin v. Burbage*, 263 N.C. 317, 326, 139 S.E.2d 753, 761 (1965) (holding doctor's testimony that plaintiff's injuries *could* reoccur fell short of establishing permanent injury) (emphasis added); *Garland v. Shull*, 41 N.C. App. 143, 147, 254 S.E.2d 221, 223 (1979) ("Testimony tending to indicate that an event *may* occur is an indication that the occurrence of the event is possible, but it is not an indication that the occurrence of the event

is certain or probable.") (emphasis added). We find this evidence speculative as to the lasting duration of plaintiff's symptoms and thus, insufficient to establish with reasonable certainty that plaintiff's injuries were permanent. *Cf. Matthews*, 135 N.C. App. at 786, 522 S.E.2d at 589 (holding evidence that it was reasonably certain that plaintiff would continue "to experience pain . . . for the rest of her life" sufficient to warrant instruction as to permanent injury).

Plaintiff also points to certain non-expert testimony, including his own and that of his wife, in support of an instruction on permanent injury. We will not consider this evidence. Where injuries are subjective, as in the case of pain, an expert witness must testify with reasonable medical certainty, from personal examination, knowledge of the history of the case, or from a hypothetical question, that plaintiff may be expected to experience future pain and suffering as a result of the injury proven. *Gillikin*, 263 N.C. at 326, 139 S.E.2d at 760-61. Accordingly, we conclude the trial court in this case did not err in refusing to submit the issue of permanent injury to the jury.

[2] Plaintiff next contends the trial court erred in granting the motion for directed verdict for defendant St. George Physical Therapy as to the punitive damages claim based on willful or wanton negligence. Under Chapter 1D of our General Statutes, the plaintiff is entitled to recover punitive damages upon a showing of willful or wanton conduct. N.C. Gen. Stat. § 1D-15. N.C. Gen. Stat. § 1D-5 defines "willful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence." The punitive damages issue is properly submitted to the jury "[i]f there is sufficient evidence from which the jury may reasonably infer that the wrongdoer's . . . acts were aggravated by . . . a wanton and reckless disregard of plaintiff's rights." *Mazza v. Huffaker*, 61 N.C. App. 170, 188, 300 S.E.2d 833, 844, *disc. review denied*, 309 N.C. 192, 305 S.E.2d 734 (1983).

Plaintiff's evidence tends to show that St. George purchased the Universal weight machine in 1985 from an outside dealer. The machine contained a warning which stated:

Serious injury can occur if struck by falling weight or other moving parts. You assume a risk of injury using this type of equipment. The risk can be reduced by always following these simple rules . . . .

2. Before use, inspect equipment for loose, frayed or worn parts. If in doubt, do not use until these parts are replaced. If the fitting fails, you may be struck by a falling weight or a moving part.

From the date of purchase to the date of plaintiff's injury, St. George replaced the cable on this particular machine two times. In 1990, St. George purchased a replacement cable from the dealer from whom he purchased the machine and installed it himself. In 1994, he purchased a second replacement cable from Universal, the manufacturer of the machine and installed it himself. In approximately one year, this cable began to fray. St. George attempted to purchase another cable from both the dealer and Universal, but was unable to obtain one. As such, he purchased a replacement cable from Lowe's after consulting with a salesperson and installed it himself.

Although St. George had no official "training" in weight machine repair, he had used that type of equipment for several years, having been a licensed physical therapist since 1979 and having previously installed several replacement cables on his machines. On the user's end of this particular machine, however, St. George did not fasten the cable to the metal clamp in the same way the other replacement cables required. Instead of fastening the metal part of the cable to the metal clamp, St. George fastened the plastic sheath covering the metal cable to the metal clamp. Plaintiff contends this was critical in causing the accident in this case.

After installation in this manner, St. George inspected and tested the cable. In addition, he tested the machine before each use by putting the full weight load on it and pulling on the cable, clearing the weight stack by one or two inches. Although plaintiff presented evidence of a prior accident on this machine approximately one month earlier, it was not related to the stability of the replacement cable.

Plaintiff has pointed us to no case law authority addressing the propriety of punitive damages based on facts analogous to these. Although plaintiffs have cited several cases where evidence was sufficient to submit the issue of punitive damages to the jury, all of them involve far more egregious circumstances, including *Boyd v. L.G. Dewitt Trucking* Co., 103 N.C. App. 396, 405 S.E.2d 914, *disc. rev. denied*, 330 N.C. 193, 412 S.E.2d 53 (1991) (court properly submitted punitive damages issue to jury where evidence showed defendant driver was intoxicated at the time of the car accident in which plain-

tiff was killed, was traveling in excess of the speed limit with a fully-loaded rig and unauthorized passenger and no attempt made to avoid accident); *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 361 S.E.2d 909, *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1987) (issue of punitive damages properly submitted to jury where decedent was struck by defendant's train; evidence indicated defendant failed to take any safety precautions and failed to warn persons crossing unusually hazardous train track); *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 291 S.E.2d 897, *aff'd per curiam*, 307 N.C. 267, 297 S.E.2d 397 (1982) (issue of punitive damages based on *gross negligence* properly submitted to jury where decedent died by electrocution from wire attached to defendant's pole; evidence revealed deficient inspections, wire was neither grounded nor insulated, periodic arcing observed on nearby transformer days before incident, wire was slack, transformer located on congested corner of pole).

More analogous to this case, however, is *Butt v. Goforth Properties, Inc.*, 95 N.C. App. 615, 616, 383 S.E.2d 387, 387 (1989), where defendants failed to adequately secure a trailer before unhitching it from a truck. The trailer subsequently rolled down two hills and across a road before crashing into plaintiff's house. *Id.* The crash resulted from poor safety training and supervision by defendant company, deviation from customary practices in the industry and use of improper equipment. *Id.* at 619, 383 S.E.2d at 389. Yet, the Court concluded these facts did not rise to the level of willful or wanton conduct establishing entitlement to punitive damages. *Id.*; *see also Starkey v. Cimarron Apartments; Evans v. Cimarron Apartments*, 70 N.C. App. 772, 321 S.E.2d 229, *disc. review denied*, 312 N.C. 798, 325 S.E.2d 633 (1984) (evidence that defendant landlord knew apartment building did not have attic fire walls and failed to correct this condition insufficient evidence of willful or wanton conduct supporting punitive damages). Similar to *Butt*, while the evidence in this case indicates that defendant may have been negligent in deviating from customary standards in caring for the Universal machine, it does not rise to the level of willful or wanton conduct. Plaintiff's evidence falls short of creating a reasonable inference that defendant recklessly disregarded plaintiff's rights or safety. Thus, we conclude the trial court did not err in granting the motion for directed verdict for defendant St. George as to the punitive damages claim.

[3] Plaintiff next contends the trial court erred in denying his Rule 60 motion for relief from judgment. In that motion, plaintiff asserted the trial court's final judgment reflects an "oversight or omission regard-

ing the proper designation of defendant" by identifying defendant simply as "St. George Physical Therapy." Plaintiff asserts the proper designation of defendant for purposes of judgment is "Rick E. St. George d/b/a St. George Physical Therapy." The record in this case contains no copy of a final order denying plaintiff's motion for relief from judgment. Although the record contains an order denying plaintiff's motion for a new trial which appears to have initially mentioned plaintiff's Rule 60 motion, that portion of the order mentioning Rule 60 has been marked out. Although defendant's brief notes that a portion of the order is marked out, neither party sets forth any explanation, and plaintiff does not address it.

The appellant has the duty to see that the record on appeal is properly made up. *Tucker v. Telephone Co.*, 50 N.C. App. 112, 118, 272 S.E.2d 911, 915 (1980). This Court is without authority to entertain appeal on an issue which lacks entry of judgment. *Searles v. Searles*, 100 N.C. App. 723, 724-25, 398 S.E.2d 55, 56 (1990). A judgment is properly entered through composition of an order, which must be reduced to writing, signed by the judge and filed with the clerk of court. N.C.R. Civ. P. 58; *Abels v. Renfro Corp.*, 126 N.C. App. 800, 803, 486 S.E.2d 735, 737 (1997). Absent any entry of judgment on plaintiff's Rule 60 motion, we are without authority to address plaintiff's contention.

**[4]** Although defendant St. George Physical Therapy has filed a cross-appeal in this matter, we do not reach the merits of that appeal. The Rules of Appellate Procedure require that every assignment of error "shall state plainly, concisely and without argumentation the *legal basis* upon which error is assigned." N.C.R. App. P. Rule 10(c)(1) (emphasis added). Our courts have been clear to articulate that absent a specific legal basis, an assignment of error is deemed abandoned. *See, e.g., Rogers v. Colpitts*, 129 N.C. App. 421, 423, 499 S.E.2d 789, 790 (1998); *Kimmel v. Brett*, 92 N.C. App. 331, 335, 374 S.E.2d 435, 437 (1988). The legal basis need not be particularly polished; it need only put the appellee and this Court on notice of the legal issues that will be contested on appeal. Examples of sufficient legal bases are even included within the Appellate Rules themselves. *See, e.g.,* N.C.R. App. P. app. C, tbl. 4 ("[Defendant] assigns as error . . . [t]he court's admission of the testimony of the witness E.F., *on the ground that* the testimony was hearsay." (emphasis added))

Defendant has alleged five assignments of error, none of which state a legal basis upon which the error is assigned (e.g., "Entry of the Trial Court of its Order dated April 30, 1999, denying the Motion of the

defendant for a directed verdict to dismiss the claim of the plaintiff for compensatory damages"). Thus, these assignments of error are deemed abandoned and defendant's cross-appeal is dismissed.

The ruling of the trial court is affirmed; defendant's cross-appeal is dismissed.

Judges WYNN and HUNTER concur.