CALABRIA, Judge.
Roy Lynn Moose, Jr. ("defendant"), appeals from a judgment entered upon his convictions for obtaining property by false pretenses and misdemeanor larceny. For the reasons set forth below, we find no error in the trial court's judgment.
On 18 May 2015, a grand jury indicted defendant for larceny after breaking or entering and obtaining property by false pretenses.[2] Defendant was tried on 5 and 6 April 2016. At trial, the State's evidence tended to show the following facts: From at least 2009 to June of 2013, defendant resided with his wife and two children at 3120 White Road ("White Road residence") in Rowan County, North Carolina. Defendant's father-in-law, Eubert Misenheimer, Jr.,[3] owned the house but did not reside there with defendant and his family.
Mr. Misenheimer's son, Eubert Misenheimer, III, ("E.B.") resided in the White Road residence with defendant and his family for approximately four years. While staying at the house, E.B. and defendant noticed there was a problem with the wiring that caused the circuit breaker box to "short out." Defendant and his wife and E.B. and his girlfriend split the cost to purchase a new breaker box, and defendant and E.B. installed it together.
Around June or July 2013, electricity was cut off in the White Road residence due to failure to pay the electrical bill. Soon thereafter, defendant and his family moved out of the house, though they failed to take all of their personal belongings with them. Defendant called Mr. Misenheimer once to discuss getting his belongings out of the house but never followed up with a time to meet.
E.B. and his girlfriend continued to live in the White Road residence several months after the power was disconnected. E.B. repaired all the electrical outlets throughout the house, replaced some of the electrical wiring, and patched the porch and roof. In September 2013, E.B. moved out of the house and moved in with his father. No one lived in the White Road residence thereafter.
On 4 January 2014, while driving by the White Road residence during work, E.B. noticed defendant's car parked in the front yard. E.B. decided he would return to the house after work. When he returned to the house, E.B. discovered that the well pump and the well bladder tank had been pulled out of the ground. Inside the house, E.B. noticed that locked doors had been busted open and that various items were missing. The breaker box had been removed from the wall. E.B. looked under the house and noticed the copper house wire had been removed.
On 2 January 2014, defendant sold some short heavy steel, electric motors, copper house wire, and clean aluminum to TH Davis, a local scrapyard, and was paid $29.07. On 4 January 2014, defendant returned to TH Davis with some yellow brass, light steel, and copper house wire and received $18.90. E.B. called TH Davis to determine whether the items missing from the house had been brought there. Following that conversation, E.B. contacted law enforcement.
On 4 January 2014, E.B. spoke with Deputy Oliver Green of the Rowan County Sheriff's Office. On 8 January 2014, Deputy Green went to TH Davis, where he was provided copies of the invoices and receipts given to defendant. TH Davis also provided Deputy Green with Mr. Misenheimer's well pump and well bladder tank, which were returned to Mr. Misenheimer.
Deputy Green located and talked to defendant, who admitted to entering the White Road residence and taking the breaker box, well pump, well bladder tank, and copper house wire. Defendant explained to Deputy Green he thought he had the right to take the items because he had lived there. On 4 January 2014, defendant wrote and signed the following statement: "My intentions was to get my propertie to what i thought was mine and took it to t.h. Davis and only received around 40 to 45 dollars[.] Breaker Box, well house motor and holding tank and wires were taken from house and took to th Davis."
Defendant moved to dismiss the charges at the close of the State's evidence. The trial court denied the motion. Defendant then testified, providing his version of the pertinent facts: Defendant made several repairs to the house while living there, including redoing the plumbing underneath the house, rewiring the room in which he stayed, replacing the well pump and well bladder tank, and replacing the breaker box. Defendant was at a cookout sometime after he had moved out of the White Road residence, and Mr. Misenheimer and E.B. were there and explained to him and his wife that they "had as much right to go over and get everything that we had put into the home to maintain the home, to try to recoup some of our money back since the house was no longer livable." After defendant unsuccessfully sought to arrange a time to meet Mr. Misenheimer at the house to retrieve his belongings, he decided to go to the house alone, believing he had permission to do so. Defendant used a key to unlock the front door, and upon entering the house discovered that several of his tools were missing. Defendant broke the padlock on the door to the room in which he had stayed but did not break any other padlocks. He only took the items he believed to be his.
At the close of all evidence, defendant renewed his motion to dismiss the charges, which the trial court again denied. The jury found the defendant not guilty of breaking or entering, but found him guilty of misdemeanor larceny and two counts of obtaining property by false pretenses. The trial court consolidated the misdemeanor larceny conviction and one count of obtaining property by false pretenses for judgment and sentenced defendant to a suspended term of 6 to 17 months' imprisonment, and placed him on supervised probation for 60 months.[4]
On appeal, defendant contends that the trial court erred in denying his motion to dismiss the charge of obtaining property by false pretenses because the State failed to produce evidence that defendant's representation to TH Davis that he was the lawful owner of the scrap metal was calculated and intended to deceive. We disagree.
"This Court reviews the trial court's denial of a motion to dismiss de novo. " State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citations omitted), cert. denied , 531 U.S. 890, 148 L.Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied , 515 U.S. 1135, 132 L.Ed. 2d 818 (1995).
The offense of obtaining property by false pretenses has four elements: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." State v. Cronin , 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980) ; N.C. Gen. Stat. § 14-100(a) (2015). "Intent ... is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." State v. Hines , 54 N.C. App. 529, 533, 284 S.E.2d 164, 167 (1981) (quotation marks and citation omitted). "[I]n determining the presence or absence of the element of intent, the jury may consider acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged...." Id. (quotation marks and citation omitted).
As an initial matter, we note that while defendant included 14 CRS 50106 in the caption of the record on appeal, he did not include the warrant, indictment, or judgment corresponding with that case number. As the appellant, defendant has the duty to see that the record on appeal is compiled properly. Collins v. St. George Physical Therapy , 141 N.C. App. 82, 89, 539 S.E.2d 356, 361 (2000). As a result of defendant's failure to include the necessary documents related to 14 CRS 50106 in the record on appeal, we are unable to review the judgment in that case. See N.C.R. App. P. 9(a)(3)(g) (requiring an appellant in a criminal action to include in the record on appeal copies of the judgments from which appeal is taken).
The warrant for arrest issued in 14 CRS 50105 indicates that that charge of obtaining property by false pretenses related to an incident on 4 January 2014, in which defendant exchanged yellow brass, light steel, and copper house wire for $18.90 from TH Davis. Considered in the light most favorable to the State, the evidence at trial showed that defendant had admitted to Detective Green, and subsequently in writing, that he had taken the copper wiring out of the house and brought it to TH Davis to sell. When admitting to Detective Green that he took the various items from the house, defendant stated that he had paid half the cost of the breaker box, but did not claim to have paid for any of the other items. E.B. and Mr. Misenheimer testified that Mr. Misenheimer had installed the wiring in the house prior to defendant and his family moving in, and E.B. testified that the wiring under the house was already there when he and defendant replaced the breaker box. When defendant brought the copper house wire to TH Davis on 4 January 2014 to exchange, he signed a statement that "I am the rightful owner ... of the scrap property listed above and have the lawful right to sell or dispose of this scrap property." Defendant received $13.20 in exchange for the copper house wire he brought to TH Davis on 4 January 2014.
While there was no direct evidence introduced showing that defendant intended to deceive TH Davis, the circumstantial evidence creates the permissible inference that defendant's misrepresentation that he was the rightful owner of the copper house wire was calculated and intended to deceive TH Davis into paying him for the material. Accordingly, the trial court did not err in denying defendant's motion to dismiss. We find no error in the trial court's judgment.
NO ERROR.
Report per Rule 30(e).
Chief Judge McGEE and Judge DILLON concur.

Review of the trial transcript suggests defendant was also indicted and tried for breaking or entering and another count of obtaining property by false pretenses. However, copies of these indictments were not included in the record on appeal.

Mr. Misenheimer's name is alternately spelled "Eubert" and "Eurbert" in the transcript.

The trial court's judgment on the second count of obtaining property by false pretenses is not included in the record on appeal.